Nicholson, C. J.,
delivered the opinion of the Court.
This was a suit in the Montgomery Circuit Court, *157 by H. C. Merritt against H. P. Duncan and others, on a bill of exchange for $3,000. The bill was drawn by H. D. Duncan on H. P. Duncan, and by him accepted. It was payable to H. D. Duncan, the drawer, and endorsed by him, J. W. Selby, "W. B. McGregor, Lewis Shepperd, and ¥m. Griffy. It was dated on the 11th of November, 1868, payable at ninety days from date, and negotiable on the 16th of November, 1868, to H. C. Merritt.
The, declaration was in the usual form. The defendants put in separate pleas, denying in general terms their liability, and special pleas were filed by all except H. D. Duncan, the drawer, denying their liability, for the reason that their acceptance and endorsement were not absolute, but conditional.
Plaintiff entered a nol. pros, as to McGregor and Selby, and proceeded to trial against the other parties. Under the charge of the court, the jury found against H. D. Duncan, and in favor of the other defendants. From the judgment rendered on this verdict the plaintiff has appealed in error to this court. The errors relied on for a reversal are assigned upon the charge of the court. Those portions of the charge specially excepted to are as follows:
“If you find that H. D. Duncan owes the drawer and payee of the bill, and that he procured H. P. Duncan to accept it, he not having any funds of H. D. Duncan in his hands, and that he procured defendant Griffy to endorse it upon the express condition that said H. D. Duncan should make a deed of trust to a sufficient amount of property to save them harmless *158 in the event they had said bill to pay, and also that he would procure other solvent persons to endorse with them before he was authorized to dispose of the bill; and if you believe that the defendant, H. D. Duncan, passed said bill to plaintiff in person, and received the consideration for it, without having complied with the conditions upon which he procured the acceptance and endorsements, then it would be an escrow, and would not bind defendants, II. P. Duncan and "Wm. Griffy.”
Again: “If you should believe that plaintiff came in possession of the bill in due course of trade, and took it from the apparent owner, then the last endorser would be liable to him, though the bill was a forgery; but due course of trade is when the buyer takes the bill before it is due, and from the last endorser, by parting with his money or property in good faith for it. On the other hand, if the plaintiff took the bill from the drawer and payee, this would not be a taking in due course of trade, but would be a circumstance of suspicion, and would affect him with notice of any equities between the original parties to the bill, although he did not have any actual notice.”
The first proposition, when analyzed, is, that if the drawer of the bill procured it to be accepted and endorsed upon specific conditions, he then took it as an escrow, and his sale of the bill to the plaintiff was not binding on the acceptor and endorser.
This proposition assumes that when a note or bill is endorsed or accepted upon a condition, the maker or drawer can not sell it, even to a bona fide purchaser without notice, so as to bind the acceptor or en *159 dorser. It ignores the distinction between a purchaser with and one without notice of the condition upon which the acceptance was made. In the case before us the proof is that H. P. Duncan refused to accept the bill except on condition that William Griffy should become endorser, and that he should be indemnified by deed of trust; that William Griffy refused to endorse except on condition that Ransom Morrow should endorse before him; that the bill was received by the drawer on these conditions; and that it was sold to plaintiff without any compliance therewith. It is proved by the plaintiff that he purchased the bill without any notice of the conditions on which it was accepted and endorsed.
Assuming these facts to be true, it is • clear that H. D. Duncan was guilty of fraud upon the acceptor and endorser, in selling the bill in violation of the agreement on which he procured the acceptance and endorsement. It is equally clear that the purchaser got no title on which he could ■ recover as against the acceptor or endorser, unless the fact that he was a purchaser in. good faith, for value, and without notice of the conditions, would give him such title.
In the case of Small v. Smith, 1 Denio R., 583, it was determined that if the note be transferred by the maker in violation of an agreement with the accommodation endorser, the holder can not recover against the endorsor without proving that he received it in good faith, upon a valuable consideration, and without notice of the arrangement on which the en *160 dorsements had been made. The principles, say the Court, admit of no dispute, and although upon some points of commercial law in close proximity to these, discordant opinions may be found, there is entire harmony as to those mentioned. The same doctrine is laid down in Nallett v. Parker, 6 Wend., 615; Mickles v. Calvin, 4 Barb., 304; Woodhull v. Holmes, 10 John. R., 231; Munroe v. Cowper, 5 Pick. R., 412.
The same doctrine was laid down with clearness and precision in the case of Van Wyck v. Norvell, 2 Hum., 195. Judge Green said: “It is settled as a general rule, that a holder coming fairly by a bill 'or note has nothing to do with the transaction between the original parties, and if negotiable paper is transferred for a valuable consideration without notice of any fraud, the right of the holder shall prevail as against the true owner. This principle is an exception to the general rule of law, which is, that the true owner is entitled to his property wherever he may find it. But with a view to favor the credit and circulation of commercial paper, it has been deemed consistent with sound policy to adopt in relation to such paper this rule.” In Murray v. Lardner, 2 Wal., 121, the Court say: “The possession of such paper carries the title with it to the holder. The possession and. title are one and inseparable. The party who takes it before due, for a valuable consideration, without knowledge of any defect of title, and in good faith, holds it by a title valid against all the world.”
*161 The cases of Perry v. Patterson, 5 Hum., 133, and of Arode v. Dixon, 6 Exchequer R., are not in conflict with the rule recognized in the several authorities cited. In neither did the question arise whether the holder of the note purchased it without notice of the fraud perpetrated in its transfer; nor could the purchaser, under the facts in either case, rely upon the benefit of the rule which protects an innocent purchaser, for value, without notice. The charge of the judge in the case before us was erroneous, and necessarily misled the jury.
To the other portion of the charge above quoted, several objections are taken. The judge defines “due course of trade,” and by his definition he seems to make it essential that the buyer should take the bill from the last endorser, in order that he should be a purchaser in due course of trade. It is true that the legal title to the bill must pass from the last endorser to the purchaser, but the drawer may be in possession of it as its apparent owner, or as the agent of the endorser, and as such may pass it to the purchaser, and in such case his title would be as good as if it passed to him directly from the last endorser, provided his purchase was bona fide, for value, and without notice of fraud.
It is next objected that the Judge instructed the jury, that if the plaintiff took the bill from the payee or drawer, this would be a circumstance of suspicion, and would affect him with notice, although he did not have actual notice of any equities between the original parties. The Judge lays it down *162 as matter of law that if the purchaser of the bill takes it from the drawer, he is thereby affected with notice of prior equities. The fact that the drawer of a bill, after it has been endorsed, has it in his possession for sale does not, as matter of law, carry with it the force of notice of prior equities to a purchaser, but it is a fact which may have weight or not, according to the surrounding circumstances, to be looked to in determining whether the purchaser had notice or not.
It was therefore erroneous in the Judge to instruct the jury that the fact that the drawer of the bill passed it to the plaintiff affected him with notice of prior equities between the parties to the bill.
There is a conflict in the authorities as to whether the holder of a bill or note can claim the benefits of an innocent purchaser, if he has no knowledge of prior equities, but has notice of such circumstances as might reasonably create suspicion that the bill or note was not good.
This question was elaborately considered by the United States Supreme Court, in Goodman v. Simonds, 20 How., 343. It appears from the examination oí the authorities cited in that case, that the English rule is, that the holder of commercial paper is protected, as the owner thereof, unless it be shown that he took it with knowledge of prior equities between the antecedent parties to the instrument. The same rule is adopted by the United States Supreme Court. Judge Clifford says: “and the question whether the party had such knowledge or not, is a question of fact for the *163 jury, and like other disputed questions of scienter must be submitted to their determination under the instructions of the court; and the proper inquiry is, did the party seeking to enforce the payment have knowledge at the time of the transfer, of the facts and circumstances which impeach the title as between the antecedent parties to the instrument? ' And if the jury find that he did not, then he is entitled to recover, unless the transaction was attended with bad faith, even though the instrument had been lost or stolen. ' Every one must conduct himself honestly in respect to the antecedent parties when he takes negotiable paper, in order to acquire a title which will shield him against prior equities. While he is not obliged to make inquiries, he must not wilfully shut his eyes to the means of knowledge which he knows are at hand, for the reason that such conduct, whether equivalent to notice or not, would be plenary evidence of bad faith.”
While it is probably true, that the preponderance of authority is in support of the rule as announced in the case of Goodman v. Simonds, yet a different rule has prevailed in our State. In the case of Hunt v. Sanford, 6 Yerg., 387, Judge Green said: “It is certainly true as a general principle, that when the holder of a note or bill acquires it fairly in the usual course of trade, he has nothing to do with the original parties. But in any case in which the endorser takes the paper under circumstances which might reasonably create suspicion that it was not good, he takes it at his peril.” The same doctrine was recognized in Van Wyck v. Norvell, 2 Hum., 195.; and in Ryland v. Brown, *164 2 Head, 273. Judge McKinney said: “It is not pretended that the defendant is not a bona fide holder of the note for a valuable consideration, without notice of the facts upon which, according to the assumption, its validity may be impeached. * * * * It is considered that whatever is sufficient to put a person upon inquiry is equivalent to notice; and that when he has suilicient information to lead him to the knowledge of a fact, he shall be presumed to be cognizant of the fact.” And, again: “ We fully assent to the legal proposition, that if Brown at the time he took the note had notice, actual or constructive, that it was void, or subject to be impeached in the hands of Thompson, either for- fraud, or want or failure , of consideration, he will hold it subject to the same equities to which it was liable in the hands of Thompson.”
It will be observed that according to the course of decisions in our State, we apply the same rule to the purchaser of a note or bill which we apply to purchasers of other property.
We hold that one in possession of a note or bill subject to a transfer by delivery, is presumed to be the owner. And a purchaser of a note or bill so held, before it became due, for valuable consideration, and without notice of prior equities, takes a good title. But if he had either actual or implied notice of prior equities; that is, when anything appears, either on the face of the note or bill or aliunde, which would put a man of ordinary prudence on inquiry, the law presumes that such inquiry was made, and therefore fixes the notice on him as to all legal consequences.
*165 The rule which has obtained in England and in the United States courts, and in the courts of several of the States, rests upon the assumption that the importance of protecting negotiable paper for the benefit of commerce is so great that the purchaser of it should stand on a different and more favored ground than the purchasers of other kinds of property.
Thus far, the reason for this distinction has not. been sufficiently obvious to induce either our courts or Legislature to change the rule which has prevailed in our State, and we are content to adhere to it. When nothing appears on the face of the bill or note to awaken inquiry, and the purchaser buys for value in the due course of trade, he occupies the position of a bona fide purchaser for valuable consideration, without notice of prior equities, and has a right to recover against the antecedent parties. This right to recover can be defeated only by proving such facts and circumstances as would satisfy a jury that he had either actual or implied notice of the prior equities. When such facts and circumstances are proven, he is bound to make inquiry; otherwise he buys at his peril. Such is the rule in our State. •
It affords ample protection to the purchasers of negotiable paper, but it also protects antecedent parties against frauds upon their rights. The other rule permits the purchaser of negotiable paper to remain passive, and make no inquiry, though he may be cognizant 'of suspicious circumstances as to the validity of the bill he is getting. He must not shut his eyes to the means of knowledge which he knows are at *166 hand, but he is not obliged to make inquiry. If he can escape the charge of bad faith, he is entitled to recover.
The distinction attempted to be drawn by Judge Clifford in Goodman v. Simonds between bad faith and passive non-action by a purchaser cognizant of suspicious facts and circumstances adverse to the title he is getting, is so thin and refined that we are at a loss to appreciate its importance. If a man has information which is calculated to throw suspicion over the title of property which he is about buying, and declines to inquire whether the suspicion is well founded or not, but proceeds to buy and take title, in a court of conscience he is guilty of a fraud. But according to the reasoning of the Judge, he is not guilty of bad faith, and is an innocent purchaser, and to be protected as such.
We are of opinion that our rule is better calculated than the other to promote strict honesty in transactions in negotiable paper on the part of purchasers, and still to secure to them full protection.
Eor the errors indicated the judgment is reversed.