## Gates, et al. v. Shannon.

(Decided October 9, 1923.)

## Appeal from Harlan Circuit Court.

1. Frauds, Statute of—Description of Property in Option in Lease as Building on West Side of Certain Avenue Known as the Rink Sufficient.—Where property in option to purchase contained in lease was described as "the building on the west side of C. avenue known as the rink," and it was not claimed that there was any other property so designated, and possession was given to the lessee, and the property thereby identified, the description of the property was sufficient under the statute of frauds to authorize recovery.

2. Specific Performance—Increase in Value of Property no Defense. —In an action for specific performance of an option to lessee to purchase, it was no defense that the property had greatly increased in value.

3. Vendor and Purchaser—Possession of Lessee Notice of Option to Purchase.—Notice of right of lessee under his lease to purchase the property will be imputed to a purchaser from the lessor by actual possession of the land by the lessee.

4. Landlord and Tenant—Lessor Held Not to Have Right to Sell at Any Time by Giving Lessee Preference.—Under a lease giving lessee the right to purchase the property during the first twelve months at the price of $1,800.00, and during the second year at the price of $2,000.00, the lessor did not have the right to sell the land at any time by giving the preference to the lessee, and, upon his failure to take it, to sell to some one else.

5. Estoppel—Evidence Held Not to Show Lessee Estopped to Demand Conveyance of Property Under Option.—In an action by lessee against lessor and purchaser from lessor for specific performance of an option in the lease to purchase, evidence as to statements of the lessee to the effect that he did not want the property held not sufficient to constitute an estoppel.

JAMES H. JEFFRIES for appellants.

JAMES S. FORESTER for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

C. R. Shannon brought suit in equity against L. G. and W. C. Gates for the specific performance of an option to purchase some real property in the city of Harlan, and secured judgment in accordance with the prayer of his petition. Defendants appeal.

It appears that on February 1, 1918, W. Boyd Kelly and E. M. Howard were the owners of two adjoining lots

on Cumberland avenue in that city, upon which there had been a skating rink, and which was sometimes called the "skating rink," the building being suitable for a small garage and auto repair shop.

On February 1, 1918, by a written contract executed by all the parties, the owners leased this property to Bennett Whitfield and C. R. Shannon, for one year for the sum of $300.00, payable in monthly installments of $25.00 each with the privilege of renewal for another year for the sum of $420.00, payable in monthly installments of $35.00 each. There were further provisions giving to the lessee the right to purchase the property during the first twelve months at the price of $1,800.00, and during the second year at the price of $2,000.00.

Subsequently thereto, Kelly sold his interest in the property to S. M. and C. R. Shannon purchased the interest of the other lessee and became the sole lessee. The rents were paid regularly during the first twelve months and at its close the lessee exercised his privilege of renewal and continued in possession, paying $35.00 a month rental.

In May, 1919, the then landlords, Howard and Cawood, decided to sell the property and placed it in the hands of a real estate agent for that purpose. After some conversation with Shannon, which will be hereafter noticed, the sale was made and the property conveyed to the appellants herein. Thereafter Shannon continued to pay rental, but in the month of January, 1920, and before the expiration of his second year's lease, he tendered $2,000.00, accompanied by notice of his claim, and demanded a conveyance of the property, which was refused.

The grounds relied upon for reversal are: (a) That the description of the property is so indefinite as to preclude a recovery under the statute of frauds; (b) that appellants were innocent purchasers for a valuable consideration without notice, and therefore not affected by the option provision; (c) that the appellee was estopped from relying upon the option; (d) the property had advanced in value during leasehold, and it would be inequitable to enforce the contract according to its terms.

In the lease the property was described as being "the building on the west side of Cumberland Avenue, known as the rink." It is admitted that this property was sometimes called the "rink," that it does lie on the

west side of Cumberland avenue, and it is not claimed that there was any other property so designated, besides possession was given to the lessee under the lease, and the property thereby identified, hence we do not think that there is any merit in the first contention. It is not argued seriously that the option contract was in anywise affected by the increase in value of the property, hence the fourth ground is no defense, though it might be considered as evidence affecting the credibility of the appellee on the question of estoppel.

As to whether appellant was chargeable with notice of appellee's equity is an interesting question.

"It is a general rule that whatever puts a party on inquiry amounts, in judgment of law, to notice, provided the inquiry becomes a duty, and would lead to knowledge of the facts by the exercise of ordinary intelligence and understanding. Wherever facts put a party on inquiry constructive notice will be imputed to him, if he designably abstains from inquiry for the purpose of avoiding notice." 29 Cyc., 1114.

In Everidge v. Martin, 164 Ky. 505, the court said:

"This court, in Willis v. Vallett, *supra,* quoting from 4th Kent's Commentaries, says: "The general doctrine is, that whatever puts a party on inquiry, amounts in judgment of law to notice, provided the inquiry becomes a duty, as in the case of purchasers and creditors, and would lead to the knowledge of the requisite fact by the exercise of ordinary intelligence and understanding.' Russell v. Petree, 10 B. M. 184; Bennett v. Titherington, 6 Bush 196.''

In the Russell case, cited *supra,* one Powell held a title bond to two town lots and delivered them to Russell as security to indemnify him in the payment of some improvements thereon and also against loss as surety for Powell on a replevin bond. Subsequently he assigned the bonds to Russell, who held them without being recorded, and later Powell mortgaged the lots to Roberts and Newton. Powell represented to them that the bonds had been left with Russell to secure some debts which had been paid. In a suit by Roberts and Newton to enforce the mortgage lien, Russell claimed an assignment of the bonds. The court held that the fact that Roberts and Newton were told that Russell had possession of the bonds was sufficient in law to put them on inquiry of Russell as to the nature and extent of his claim, and that

if they relied on the statement of Powell that the Russell debts were paid, they did so at their peril, and that this was constructive notice of Russell's claim.

The exact point was decided in Kerr, et al. v. Day, et al., 14 Penn. 112, in which the various English authorities are reviewed, and in which the syllabus is fully supported by the text. It reads:

"In the case of articles of agreement, leasing land with the right to purchase, though such right rests solely with the purchaser, it may be enforced by the purchaser, and such optional right may be transmitted to his vendee; notice of this right will be imputed to a second purchaser from the original vendor, by actual possession of the land agreed to be sold, which is consistent with the contract."

This conclusion seems to be supported by reason and authority. We can draw no distinction between a lessee with an option of purchase, who is occupying land, and one who is occupying such property under an unrecorded title bond; hence, we conclude that it was the duty of aplennant upon learning of appellee's lease to have inquired of him as to its terms and extent. This would have disclosed the option; such information was sufficient to constitute constructive notice.

On the question of estoppel appellant introduced the following evidence: Dr. E. M. Howard testified that he had had several conversations with Shannon in reference to the sale of the property. He said: "We wanted to sell the property and I talked it over with Chas. Shannon several times and with other members of the concern and they did not want to buy it. They either said it was too much—they did not want to take it or something to that effect—and we proceeded to sell it to somebody else. Finally, before we sold it I think Mr. Cawood and I went together to see Mr. Shannon and offered it to him and wanted to sell it to him. . . . I don't remember just the words he used; he either told us he did not want it or could not take it—I don't know which he said—anyhow he did not want to take it up or did not take it up."

Cawood did not testify. John Middleton testified that he was a real estate agent, and the property was put in his hands for sale, and that he did sell it to the Gates Brothers. That before so doing he called upon Shannon. He did not know that he had an option but gave him the first offer; he didn't know hardly the answer Shannon

gave but believes he just said "he did not want it.". He says that W. T. Barker was present at the time and Barker testifies: "John Middleton said he was going to talk with these people. He says I am on a trade for this place; here is a fellow, he says, wants to buy it; he says I am going to sell it to him if we can trade. I will give you fellows the refusal if you want it. He (Shannon) said he didn't want it, he didn't reckon he wanted it, and John told him if they made the deal they had about eight months to run and they could pay the rent to them fellows if they bought it." In answer to another question the witness stated: "He said he didn't reckon he wanted it or something to that effect."

Shannon only remembered one conversation, that with Cawood in which he told him: "I told him I was not able at that time and that it might be later on," and claims that he never intended to surrender the option.

It will be observed that the appellees had decided to sell this property and had placed it in the hands of a real estate agent for that purpose. Their construction of the lease seems to have been that they had the right to sell it at any time by giving the preference to Shannon, and that upon his failure to take it they could sell to anyone else. This was not a proper construction of the lease. Shannon had until the first of February to determine whether or not he would exercise the option and it is doubtful whether the conduct of Cawood and Howard was influenced at all by his action or statements. Of course if he had decided on purchasing it at the time indicated, such decision would have ended the matter, but there is nothing to show that they would not have made the sale if he had remained quiet, or had stood upon his rights and demanded that no action be taken until the first of February. We would not be understood as saying that it would require a cancellation of the option or an agreement to that effect in order to avoid it. There is no question that by clear and unequivocal statements or acts Shannon could have estopped himself from its enforcement, but in view of the circumstances we do not think the evidence sufficient to constitute an estoppel. Middleton does not really remember what Shannon said. Barker says that he said: "He couldn't or reckoned he couldn't take it," and Howard does not remember the words used but says: "He either told us he did not want it or could not take it, I don't know which he said,

anyhow he did not want to take it up or did not take it up.'' All of this is consistent with the statements of Shannon that he could not take it up at that time, and can be construed as referring to an immediate sale, as well as it can to a final surrender of the option.

In view of this and also in view of the holding of the trial court, who knew the witnesses and whose opinion is entitled to some weight, we cannot say that this would create an estoppel upon the part of Shannon. Having reached this conclusion it is unnecessary to decide whether there was such privity between the appellants and their vendors as would enable them to plead an estoppel, in the event such plea had been available to the vendors. Certainly there was no conversation between them and Shannon, and unless it is shown that an estoppel existed in favor of Cawood and Howard and inured to their benefit no estoppel exists in their favor.

Judgment affirmed.

Whole court sitting.