Texas Co. *v.* Aycock *et ux.*

(*Nashville,* December Term, 1949.)

Opinion filed February 10 1950.

Rehearing Denied March 17, 1950.

STOCKELL & FINNEY, of Nashville, for appellant.

A. A. KELLY, of South Pittsburg, for appellees.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

The Texas Company filed this bill against Aycock and wife to procure specific performance of a contract to convey it certain real estate. An alternative prayer is "that the Court divest title out of the said Clyde Aycock and wife, Christine Aycock, into The Texas Company" upon the payment into Court of the contract purchase price. The bill was demurred to upon a number of grounds, some of which were overruled by the Chancellor, some sustained, and the bill dismissed. Both complainant and defendants have appealed and assigned errors.

On May 17, 1939 The Texas Company, as lessee, and one John Herbert Harris, as lessor, entered into a written lease of the real estate in question for a term of ten years. The lessor agreed to construct a motor vehicle service station according to certain specifications on the premises demised for the use of the lessee.

As a matter of fact, the lessor, Harris, had no interest in the leased premises, the title thereto being in one C. E. Brown. Brown signed the lease as a "witness". Brown built the service station required by the lease. A few months after the execution of this lease, Harris, acting on Brown's instructions, directed The Texas Company to pay the rents to Brown's wife. This was done until Brown and wife sold the property to defendants Aycock and wife nearly nine years later. The proper conclusion from the statements of the bill is that The Texas Company was not consulted as to this sale, but paid the rents due under its lease to Aycock and wife after the sale. Aycocks' deed from the Browns was recorded.

Clause 10 of the lease executed by Harris granted The Texas Company an option to purchase the premises in

question "at any time during the term of this lease for the sum of $12,000.00". There followed a standard provision for giving notice by the lessee of an election to exercise the option, and by the lessor, the furnishing of an abstract of title and a warranty deed. This lease was properly acknowledged, but never recorded.

In 1939, that being the first year of this lease executed by Harris, The Texas Company sub-leased the premises in question to Aycock as a dealer in the sale of gas, oil, etc., presumably the products of the Texas Company. The sub-lease was renewed from time to time, the last one being executed as of October 21, 1947 for a period of one year.

It was on January 17, 1948, during the term of the last sub-lease to Aycock, that Brown and wife deeded this sub-leased property to defendants Aycock and wife. This deed warranted the title to be clear and unencumbered *"except 1) a lease to Texas Company"*, and another encumbrance not necessary to mention here. (Emphasis supplied.)

On May 20, 1948, which likewise was during the term of the last sub-lease between Aycock and The Texas Company, he, Aycock, wrote The Texas Company that he, Aycock, was canceling the sub-lease effective June 15, 1948, a date likewise within the period of the sub-lease between Aycock and The Texas Company. Considerable correspondence followed wherein Aycock took the position that before he, Aycock, bought the property he had examined the public records and found no lease of record *between Brown* and The Texas Company and "neither did I have any knowledge of a lease held by you executed *by any former owner* of the title lands on which this station is located". (Emphasis supplied.)

He had been sub-leasing this property at that time from Texas Company for nearly nine years.

Subsequently, and within the ten year period covered by the lease which had been executed by Harris to the Texas Company, it, The Texas Company, elected to exercise the option to purchase the property as granted in this lease and called upon Aycock and wife, the subsequent grantees of Brown and wife, to perform in accordance therewith.

Aycock responded to this letter with one wherein he said that Harris "was never the owner of these lands" and that the purchase price granted in the option to purchase was so inadequate as to be "shocking to the conscience". This letter recited that Aycock and wife had paid $15,000 for the property and that it is "now well worth $20,000.00". This was nine years after the option, if exercised, fixed the purchase price at $12,000, but it was before the time granted to exercise the option had expired.

There followed the aforesaid Chancery Court bill making the allegations hereinabove stated as facts. This was met by the aforesaid demurrer of Aycock and wife.

The 4th, 5th, 6th and 9th grounds of the demurrer sustained by the Chancellor were that (1) the remedy of specific performance or damages for its breach cannot "be created by implication or estoppel"; (2) the bill avers no acts upon the part of the Aycocks inconsistent with the relation of Lessor and Lessee and that the situation alleged by the bill "is not applicable to the parties in the aspect of vendor and purchaser"; (3) the relief prayed cannot be granted against Christine Aycock as tenant by the entirety since she had never been a lessee of The Texas Company "nor in privity

with complainant or complainant's lessor in any way";
(4) there were no acts on the part of Aycock and wife
which justified the invoking of the doctrine of estoppel.

██ The Chancellor filed a memo and therein specifi-
cally placed his action in sustaining the demurrer upon
Code Section 7831(4) providing that no action shall be
brought upon a contract for the sale of land unless the
agreement sought to be enforced is "signed by the party
to be charged therewith, or some other person by him
thereunto lawfully authorized." The Chancellor quite
correctly stated that the expression "signed by the party
to be charged therewith" "means the owner of the
land".

C. E. Brown was on and before May 17, 1939 the own-
er of the premises described in the lease contract of
May 17, 1939. As the record comes here, it is estab-
lished beyond doubt that Brown, the owner, authorized
Harris to enter into this contract with The Texas Com-
pany, although it does not appear why this extraordi-
narily unusual procedure was adopted. Brown signed
his name as a witness to the contract. He erected on
the premises the filling station and improvements re-
quired by it. Until his conveyance to Aycock in 1948
his wife at his directions given through Harris was paid
the rents which this contract required The Texas Com-
pany, as lessee, to pay.

██ ██ Code Section 7831(4) provides that no action
shall be brought upon such a contract unless signed by
the party charged therewith "or some other person by
him thereunto lawfully authorized." However, "the
statute does not require that the authority of the agent
or the evidence of his agency, in order to be lawful
shall be in writing". *Johnson* v. *Somers*, 20 Tenn. 268,

271. In *Wright* v. *Harrison and Black*, 137 Tenn. 157, 192 S. W. 716, a memorandum signed by the auctioneer was held sufficient, it being found that he had authority to act for "the party to be charged therewith". It would seem under the authority of these cases that Brown was bound by the contract signed by his authorized agent, Harris.

Brown and wife executed the deed conveying the premises in question to Aycock and wife. That deed expressly stated that the property conveyed thereby was encumbered by "a lease to Texas Company". So it is, that if the power of Harris as an agent had been wanting or defective, Brown, the owner of the property, and his wife, by signing the deed reciting this lease as an encumbrance, fully affirmed the act of Harris in executing the lease, and could not be heard to insist to the contrary. By so approving it after it was executed, Brown made Harris his agent from the beginning. *Myers* v. *Ross*, 40 Tenn. 59-63, and became bound thereby. *Matherson* v. *Davis*, 42 Tenn. 443, 454. Compare *Huffine* v. *McCampbell*, 149 Tenn. 47, 257 S. W. 80. All this fully satisfies the Statute of Frauds, Code Section 7831(4).

It follows that as between Brown and wife, on the one hand, and The Texas Company, on the other, the option to purchase, insofar as it had legal efficacy, was binding upon Brown and wife. That contract was not recorded. So the question is whether it is binding to any extent upon their grantees, Aycock and wife.

Although we do not seem to have any reported case predicated on the facts we have here, the general rule is stated by the annotator in 50 A.L.R. page 1315, to be this: "As between the rights of a person exer-

cising an option to purchase and the rights of one purchasing the property with notice of the option, after the giving of the option and before its exercise, the general rule accords priority to the rights of the holder of the option.''

Cases from many jurisdictions are cited in support of this rule. It is undoubtedly sound on principle and, therefore, applicable here, if Aycock and wife are chargeable with notice of The Texas Company's option to purchase.

■ Citation to authority is unnecessary in support of the statement as a well known fact that leases of land, particularly those for business purposes and for a number of years duration, quite frequently contain a clause granting to the lessee an option to purchase the demised premises at any time during the term of the lease. ·This well known fact is recognized by the text of 51 C.J.S., Landlord and Tenant, Section 81, page 634, with the statement that: ''It is usual for leases to contain a provision conferring an option on the tenant to purchase the demised premises''.

One reason for such options being incorporated in leases is logically stated in the California case of *Bewick* v. *Mecham,* reported in 26 Cal. 2d 92, 156 P. 2d 757, 760, 157 A.L.R., 1277, 1283, as follows: ''Moreover, an option to purchase the land during or at the end of the term operates to the benefit of the lessee as such, for he may erect buildings or other structures without losing their use at the end of the term, and it is therefore settled in this state that 'an option covenant contained in a lease is a real covenant running with the land.' ''

As heretofore observed, the deed by which Brown and wife conveyed to Aycock and wife expressly recited that

the land conveyed is encumbered by "a lease to the Texas Company". In the Kentucky case of *Gates* v. *Shannon*, 200 Ky. 387, 255 S.. W. 79, as annotated in 50 A.L.R. 1316, it was held that: "Knowledge of a lease places on a prospective purchaser a duty to inquire as to its terms, and is constructive notice of the lessee's option to purchase contained in the lease."

Constructive notice, however, is not sufficient under our statute to affect the rights of the grantees, Aycock and wife, since the lease to Texas Company was not recorded. Code Section 7665 provides that such unregistered instruments are not binding on third persons "not having actual notice of them". Such unregistered instruments do "take effect and are equally good as to all persons who have actual notice of them from the date of such notice, except creditors". *Wright* v. *Black,* 159 Tenn. 254, 260, 17 S. W. 2d 917, 918, 65 A.L.R. 357. Therefore, at this point we are confronted with the question of whether the facts of this case are equivalent to *actual notice* to Aycock and wife of the option to purchase granted Texas Company.

Since Aycock and wife were given actual written notice (the deed) by the owners that the land they owned and purported to convey to Aycock and wife was encumbered by a lease to The Texas Company, they, the Aycocks, were put upon inquiry as to what were the provisions of that lease, and as to whether it contained the commonly occurring option to purchase clause. All they had to do was to ask The Texas Company or Brown and wife to let them see the lease and delay consummation of the purchase until there had been answered the inquiry as to which they were put on notice.

The Supreme Court of Rhode Island dealt with this point in 1947 in a case almost on all fours in its controlling facts with the case at bar. It is the case of *Durepo* v. *May,* reported in 73 R.I. 71, 54 A. 2d 15, 19, 172 A.L.R. 429, at page 435, and on this point in that case with reference to an option to purchase contained in an unrecorded lease, that Court said this: "The reference to the lease in the recorded assignment was a circumstance that should have put him on notice, especially since the complainants had then been in open and notorious possession of the premises for some considerable time, which fact imposed upon him the further obligation of making reasonable inquiry to ascertain the nature and extent of that possession."

However, the Rhode Island opinion does not make it clear as to whether it considered the situation detailed in the above quotation constructive notice or actual notice.

The text of 39 American Jurisprudence, Section 4, page 234, is: "The words 'actual notice' do not always mean in law what in metaphysical strictness they import; they more often mean knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts."

The same text at Section 6, page 235, states that some Courts hold the notice with which we are here dealing as constructive notice while others class it "as implied actual notice. This has also sometimes been termed actual notice in the second degree".

In our State, as far back as the case of *Woodfolk* v. *Blount,* 4 Tenn. 147, 151, 9 Am. Dec. 736, it was held: "When anything appears which would put a man

of ordinary prudence upon inquiry, the law presumes that such inquiry was actually made, and therefore fixes the notice upon him as to all legal consequences''.

In *Merritt* v. *Duncan*, 54 Tenn. 156, 164, 19 Am. Rep. 612, it was held: ''It is considered that whatever is sufficient to put a person upon inquiry is *equivalent to notice;* and that when he has sufficient information to lead him to the knowledge of a fact, he shall be presumed to be cognizant of the fact.'' (Emphasis supplied.)

In *Covington* v. *Anderson*, 84 Tenn. 310, 319, the rule is thus stated: ''The rule upon the question of notice is, that whatever is sufficient to put a person upon inquiry, *is notice of all the facts to which that inquiry will lead,* when prosecuted with reasonable diligence and in good faith.'' (Emphasis supplied.)

If the rule were not as stated by the cases to which reference has just been made, reward would often result by declining to make inquiry about a matter as to which a party was given notice. This is emphasized in the quotation from 21 Am. & Eng. Ency. of Law (2 Ed.), 584 made in the case of *War Finance Corp.* v. *Ready*, 2 Tenn. App. 61, 67. That quotation is: ''Means of knowledge with the duty of using them are deemed equivalent to knowledge itself, and *passive good faith will not serve* to excuse wilful ignorance.'' (Emphasis supplied.)

 Aycock and wife were put upon an inquiry by notice of this lease as to what were its contents, and as to whether it granted the lessee an option to purchase. Applying the rule, as we must, so clearly stated by our own cases from which we have quoted, the Aycocks were thereby given notice of all the facts to which that inquiry with reasonable diligence and in good faith would have lead. They were, therefore, given actual notice, or

its equivalent, of the option granted The Texas Company to purchase the real estate in question, and that this option had been fully authorized, ratified and affirmed by the owners of the property, Brown and wife, who were their grantors.

It results that as between the optionee, The Texas Company, on the one hand, and the Aycocks, on the other, priority with reference to the rights of these respective parties to the tract of land in question must be accorded the Texas Company who is the holder of the prior option to purchase with full knowledge of which the Aycocks purchased; provided, of course, the option to purchase was enforceable against the optionors, Brown and wife.

Since the option to purchase was contained in the lease the consideration for all of which was the payment of specified rents by The Texas Company, there was a consideration for the option, though it was unseparated from that given for the occupation of the property. *Womble et al.* v. *Walker et al.,* 181 Tenn. 246, 253, 181 S. W. 2d 5. Accordingly, during the term of the option it was a contract irrevocably binding upon Brown and wife and, as against them, gave The Texas Company not less than the right to have vested in it such title as Brown and wife had in this property upon payment of the purchase price provided it, The Texas Company, elected to exercise its option, and gave notice thereof during the life of the option. *Bradford v. Foster,* 87 Tenn. 4, 9, 11-12, 9 S. W. 195. The Texas Company, as optionee, did all this.

As heretofore held, the Aycocks had actual notice, or its equivalent, of this unregistered lease containing this option to purchase and had that notice prior to their purchase from the Browns. The instrument was,

therefore, equally as effective and binding upon them as upon the Browns insofar as the right of the Texas Company, upon payment of the purchase price, to have vested in it the title conveyed by the deed of Brown and wife to the Aycocks. *Wright* v. *Black,* 159 Tenn. 254, 260, 17 S. W. 2d 917, 65 A.L.R. 357. That was practically the relief granted in *Bradford* v. *Foster, supra.* It is in accord with the alternative prayer of the bill "that the Court divest title out of the said Clyde Aycock and wife, Christine Aycock, into the Texas Company."

It results that the learned Chancellor erred in sustaining those grounds of the demurrer heretofore mentioned and in dismissing the bill by reason thereof. The assignments of error so insisting are sustained.

Aycock and wife by their appeal and supporting assignments of error contend that the Chancellor erred in not sustaining those two grounds of their demurrer which insisted that (1) Complainants have no right of action against the Aycocks; and (2) no connection or privity between the registered chain of title "whereby said lease and option could become a covenant running with the land and bind the owners". These insistences have been determined adversely to the Aycocks by that which has hereinbefore been held and are, accordingly, overruled.

From that which we have herein held, it is apparent that this cause must be remanded. Strictly speaking, The Texas Company should have paid the purchase price of $12,000 into Chancery Court. Its failure to do so, however, is not fatal as that may and should be required by the Chancellor within a specified time before further proceedings after remand. This procedure was adopted in *Bradford* v. *Foster, supra.*

The decree of the Chancellor, insofar as it overruled certain grounds of the demurrer filed by Aycock and wife, is affirmed. That decree insofar as it sustained any of the grounds of the demurrer filed by Aycock and wife and dismissed the bill is reversed. As so modified, the decree of the Chancellor is affirmed and the cause remanded for further proceedings in keeping with this opinion. All costs of both appeals will be adjudged against Aycock and wife and, unless otherwise satisfied, will be satisfied out of the purchase money to be paid into Chancery Court by The Texas Company. The costs of the lower Court will be determined by the Chancellor in due course of the further proceedings.

All concur.