434

# HENRY J. CHISHOLM et ux. v. MID-TOWN OIL COMPANY, INC.—419 S.W.(2d) 194.

Eastern Section. November 30, 1966.

Certiorari Denied by Supreme Court September 5, 1967.

Lloyd C. McCluen, Rockwood, for appellants.

Walter E. Fischer and J. Carson Ridenour, Clinton, for appellee.

BEJACH, J. This cause was heard by the Western Section of the Court of Appeals, sitting for the Eastern Section of said Court at Knoxville, Tennessee. It comes to this Court by appeal from a decree of Judge Roland Prince of the Anderson County Court of Law and Equity, which decree cancelled as a cloud on complainant's title a certain ten year lease to appellant which still has several years to run, and also granted in favor of appellees and against appellant a decree for $2,160 as damages.

The decree results from a bill filed April 20, 1965 by Henry J. Chisholm and wife, LaVada Chisholm, against the Mid-Town Oil Company, Inc. In this opinion the parties will be styled, as in the lower court, complainants and defendant, or called by their respective names.

Complainants' bill alleges that on March 29, 1963 they purchased from N. H. Lands and Lee F. Jordan by warranty deed a tract of land in Oak Ridge, Tennessee containing .45 acres on which there was a building and various structures and equipment used in maintaining and operating a gasoline service station, and that they purchased the property for the purpose of engaging in the operation of a gasoline service station. The bill alleges

that at the time they purchased the service station, N. H. Lands and Lee F. Jordan operated a gasoline service station on said property and purchased Phillips' 66 Gasoline and Petroleum Products from the Mid-Town Oil Company, Inc. The bill alleges that after they purchased the property, they decided to sell Pure Oil Company's products at their service station, and alleged that they entered into an agreement with that company to sell said products. The bill alleges that after they had entered into such agreement with the Pure Oil Company, the Mid-Town Oil Company, Inc. informed the officials of the Pure Oil Company that Mid-Town Oil Company, Inc. had a lease on said property to sell its gasoline and petroleum products and if the Pure Oil Company entered into any contract with complainants with respect to selling Pure Oil products, that said Mid-Town Oil Company would sue Pure Oil Company and that as a result thereof, the Pure Oil Company cancelled its contract with complainants and refused to market its gasoline and petroleum products at complainants' place of business, which cancellation of its contract with complainants by the Pure Oil Company entitled complainants to recover damages from the defendant Mid-Town Oil Company. The bill alleges that at the time complainants purchased the property in question, there was no lease agreement on record in the office of the Registrar of Deeds for Anderson County, Tennessee, and that complainants had no notice or knowledge of any existing lease agreement at that time and that they were bona fide purchasers without notice of any existing lease, and therefore not bound by the terms of any such lease. The bill alleges that defendant has two large gasoline tanks in the ground and will not remove them and that the Pure Oil Company cannot and will not install its tanks and pumps and furnish complainants'

gasoline, because of which $200.00 per month is claimed as damages from defendant. The bill asks for a mandatory injunction requiring the removal of said tanks and prays that the alleged lease be cancelled as a cloud on complainants' title.

Defendant filed an answer which denies that it owed complainant anything. Said answer admits that there was constructed on the land involved a service station which had been constructed since 1960, and that it had installed gasoline pumps, signs, and other equipment on said land prior to the time complainants purchased same. It, defendant's answer, admitted, as was alleged in the bill, that N. H. Lands and Lee F. Jordan operated a service station on said premises and that the gasoline tanks, pumps and equipment were installed on the property at the time complainants purchased same, and for several years prior thereto. The answer avers that on or about March 1964, the Pure Oil Company notified defendant that it had entered into a contract with complainants, but averred that the Pure Oil Company had full knowledge of the lease to defendant, having at that time contemplated purchasing said lease from defendant and having negotiated with reference thereto. It also avers that complainants had actual knowledge of such lease.

The cause was heard on oral proof, according to the forms of Chancery.

From the proof adduced it appears that Chisholm was told by Lands that the pumps did not go with the sale of the land. Complainant made no further inquiries, however, as to ownership of the pumps. It also appears that the lease was not recorded until about seven months after complainants had purchased the land from Lands and Jordan. About the time of the execution of said

lease, however, the trust deed securing the purchase price of the property was rerecorded. It is apparent to us that the rerecording of the trust deed was a mistake, and that it was the intention of the parties at that time to record the lease, which fact could have been ascertained by complainant with very slight inquiry about ownership of the pumps. It seems to us that complainant, Henry Chisholm, deliberately refrained from making inquiries.

Defendant, as appellant, has filed six assignments of error. We consider it unnecessary to copy these assignments of error into this opinion, or to discuss them in detail.

On authority of Texas Company v. Aycock, 190 Tenn. 16, 227 S.W.2d 41, 17 A.L.R.2d 322, we think complainant Henry Chisholm should be held to have had actual knowledge of the lease, and that this case should be reversed and dismissed.

Complainants, as is established by the proof, lived in the neighborhood of this property involved in this lawsuit, and owned two lots adjoining same. Complainant, Henry Chisholm, worked on the construction of the station and was paid by defendant. Complainants traded at the station operated by Lands and Jordan, and were informed and knew that they were not buying the pump, tanks, air compressor, and sign; but they made no inquiry as to the rights of the defendant or of Phillips 66 to have them on the property.

In Texas Company v. Aycock, the Texas Company undertook to exercise an option to purchase a filling station which it occupied under a lease from Harris, who had made the lease as authorized by the owner, Brown. The lease was not recorded by Aycock, the purchaser of the property, who was not a party to the lease, was held

to have actual knowledge of its provisions, and therefore to be subordinate to the rights of the Texas Company and bound by the terms of the option granted to the Texas Company. From the opinion of the Supreme Court, written by Tomlinson, J., reversing the lower court and holding that the Texas Company was entitled to exercise the option granted in its unrecorded lease and purchase the property, even though Aycock was not a party to same, we quote, as follows:

"The text of 39 American Jurisprudence, Section 4 page 234, is 'The words "actual notice" do not always mean in law what in metaphysical strictness they import; they more often mean knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts.'

The same text at Section 6, page 235, states that some Courts hold the notice with which we are here dealing as constructive notice while others class it 'as implied actual notice. This has also sometimes been termed actual notice in the second degree'.

In our State, as far back as the case of Woodfolk v. Blount, 4 Tenn. 147, 151, 9 Am.Dec. 736, it was held: 'When anything appears which would put a man of ordinary prudence upon inquiry, the law presumes that such inquiry was actually made, and therefore fixes the notice upon him as to all legal consequences'.

In Merritt v. Duncan, 54 Tenn. 156, 164, 19 Am.Rep. 612, it was held: 'It is considered that whatever is sufficient to put a person upon inquiry is *equivalent to notice;* and that when he has sufficient information to lead him to the knowledge of a fact.· he shall be pre-

sumed to be cognizant of the fact.' (Emphasis supplied.)

In Covington v. Anderson, 84 Tenn. 310, 319, the rule is thus stated: 'The rule upon the question of notice is, that whatever is sufficient to put a person upon inquiry, is *notice of all the facts to* which that inquiry will lead, when prosecuted with reasonable diligence and in good faith.' (Emphasis supplied.)

If the rule were not as stated by the cases to which reference has just been made, a reward would often result by declining to make inquiry about a matter as to which a party was given notice. This is emphasized in the quotation from 21 Am. & Eng. Ency. of Law (2 Ed.), 584 made in the case of War Finance Corp. v. Ready, 2 Tenn.App. 61, 67. That quotation is: 'Means of knowledge with the duty of using them are deemed equivalent to knowledge itself, *and passive good faith will not serve* to excuse willful ignorance.'' (Emphasis supplied.)

Aycock and wife were put upon an inquiry by notice of this lease as to what were its contents, and as to whether it granted the lessee an option to purchase. Applying the rule, as we must, so clearly stated by our own cases from which we have quoted, the Aycocks were thereby given notice of all the facts to which that inquiry with reasonable diligence and in good faith would have lead. They were, therefore, given actual notice, or its equivalent, of the option granted The Texas Company to purchase the real estate in question, and that this option had been fully authorized, ratified and affirmed by the owners of the property, Brown and wife, who were their grantors.

It results that as between the optionee, The Texas Company, on the one hand, and the Aycocks, on the other, priority with reference to the rights of these respective parties to the tract of land in question must be accorded The Texas Company who is the holder of the prior option to purchase with full knowledge of which the Aycocks purchased; provided, of course, the option to purchase was enforceable against the optionors, Brown and wife.''

Texas Company v. Aycock, 190 Tenn. 27-29, 227 S.W.2d 46.

To the same effect, we quote from Gibson's Suits in Chancery (5th Ed.) section 87, paragraph 2, as follows:

''2. What Is Meant by Being Put upon Inquiry. A purchaser, or person obtaining any right in specific property, is not affected by vague rumors, hearsay statements, and the like, concerning prior and conflicting claims upon the same property, because he thereby acquires no positive information, and obtains no tangible clue, by means whereof he may commence and successfully prosecute an inquiry into the truth. On the other hand, if the party obtained knowledge or information of facts which tend to show the existence of the prior right in conflict with the interest which he is seeking to obtain, and which are sufficient to put a reasonably prudent man upon inquiry, then it may be a legitimate and perhaps even necessary, inference that he acquired the further information which constitutes actual notice.''

Obviously, if defendants' rights were superior to those of complainants, complainants were not entitled to recover damages from the defendant.

442

The decree of the lower court will be reversed and the bill filed in this cause dismissed with prejudice. The costs will be adjudged against complainants and their surety on the cost bond filed in the lower court.

Avery, P.J.(W.S.), Carney, J., concur.