IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 13, 2010 Session

# JENNIFER BIVINS ET AL. v. CITY OF MURFREESBORO

**Appeal from the Circuit Court for Rutherford County**
**No. 53125     Robert E. Corlew III, Chancellor**

---

**No. M2009-01590-COA-R3-CV - Filed July 9, 2010**

---

Brandon Bivins died in an automobile accident on South Rutherford Boulevard in Murfreesboro. His mother sued the city, claiming that the road was unsafe or dangerous and that the city had notice of the condition of the road. The trial court held that the city did not have notice of an unsafe or dangerous condition at the spot of the accident. Because the city had notice of prior accidents along that segment of the road and had a consultant's report stating that the road did not meet design guidelines, we reverse the trial court and remand for a determination of whether the road was unsafe or dangerous.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

William Gary Blackburn and Malcolm Leonard McCune, Nashville, Tennessee, for the appellant, Jennifer Bivins.

Richard W. Rucker, Murfreesboro, Tennessee, for the appellee, City of Murfreesboro.

**OPINION**

This is a case about a fatal automobile accident on South Rutherford Boulevard ("South Rutherford") in Murfreesboro, Tennessee. South Rutherford was built by Rutherford County. Although it was annexed into Murfreesboro in 1996, the county apparently did some repaving on it in 1997. The Murfreesboro Street Department, however, did not realize that the annexation had taken place until sometime in late 2004 or early 2005. Thus, they performed no maintenance inspections on the road between the annexation in 1996 and late 2004.

On July 5, 2005, Brandon Bivins was driving east-bound on South Rutherford, toward Broad Street. The road was wet from rain. Bivins lost control of his car soon after he passed the Southern Container Co. driveway, crossed the center line and crashed into a car driven by Daniel Spencer. Both cars were apparently then hit by a tractor trailer truck. Bivins and Spencer died.

This wrongful death action was brought by Brandon Bivins's mother, Jennifer Bivins, against the City of Murfreesboro pursuant to the Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-101 *et seq*. She alleged that the city had actual or constructive knowledge that the road was unsafe or dangerous. The city defended on the basis of lack of notice and maintained that the road was not unsafe or dangerous. The trial court found that the city did not have notice. Whether the court found that the road was not unsafe or dangerous is a matter for later discussion.

STANDARD OF REVIEW

This court reviews the findings of fact of the trial court de novo with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). The trial court's conclusions of law are reviewed de novo without a presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

ANALYSIS

The Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-101 *et seq*., is a limited waiver of the sovereign immunity of cities and counties. That is, the act removes their immunity for a specified list of situations. In this instance, the appellant argues that Tenn. Code Ann. § 29-20-203(a) applies. It reads:

> Immunity from suit of a governmental entity is removed for any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity. "Street" or "highway" includes traffic control devices thereon.

Immunity from suit is, however, waived only where it is proved that the governmental entity had "constructive and/or actual notice" of the alleged condition. Tenn. Code Ann. § 29-20-203(b). Our Supreme Court defined actual notice as "knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts." *Kirby v. Macon County*, 892 S.W.2d 403, 409 (Tenn. 1994) (citing *Texas Co. v. Aycock*, 227 S.W.2d 41, 46 (Tenn. 1950)). The court also defined constructive notice as "information or knowledge of a fact imputed by law to

-2-

a person (although he may not actually have it) because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it." *Id*. (quoting BLACK'S LAW DICTIONARY 1062 (6th ed. 1990)).

The city's defense is simple: it maintains that it had no notice of any unsafe or defective condition at the place on South Rutherford where the Bivins accident occurred. The appellant, Ms. Bivins, maintains that a broader view of notice is appropriate in this case.

While the case was well-tried by both sides, the proof is lengthy and, at times, hard to follow.[1] The segment of South Rutherford in question runs from the railroad tracks past the Southern Container Co. to the city limits line. Although called South Rutherford Boulevard, this segment of road runs as much east-west as it does north-south.[2] Thus, most of the testimony refers to easterly and westerly directions. The lawyers refer to this segment as being a reverse "s" curve, although there is some dispute as to how much the eastern curve actually curves. The driveway for Southern Container is roughly between the two curves that make up the reverse "s." When the driveway was built, the city made Southern Container install a turn lane on South Rutherford. Consequently, the road at the driveway was repaved in 2003 to accommodate the new turn lane.

Two fatal accidents occurred at approximately the same place in the segment of the reverse "s" curve to the west of the Southern Container driveway – the Alexander accident in October 2004 and the Meyers accident in January 2005. Shortly after the second accident, in early February 2005, Lt. Watson of the Murfreesboro Police Department's Fatal Accident Crash Team contacted Tennessee Highway Patrol Sgt. John Albertson seeking slope readings and drag factor readings on South Rutherford at the scene of the fatal crashes. The police took the Tennessee Highway Patrol reports to Ram Balachandran, the City Traffic Engineer on February 8 or 9. Balachandran, in turn, took the information to Chris Griffith, the City Engineer. Balachandran also decided to put up "Slippery When Wet" signs with a "35 MPH Advisory Speed plaque" on either side of the curve where the Alexander and Meyers accidents occurred as an "interim measure," pending Griffith's evaluation of the roadway. At about this time, Sgt. Fanning directed officers to run radar and be seen on South Rutherford between Church and Broad Street when it was raining in order to slow down traffic.

---

[1]For example, there are several instances in the written record where people refer to an aerial photograph of the roadway, but it is not possible to determine the portions of the photograph to which they are referring.

[2]Beyond the railroad tracks to the west lies Church Street. Beyond the city limits to the east lies Broad Street.

Balachandran also asked the police for accident reports for South Rutherford since 2002. He was given between 20 and 25 reports, most of which reported accidents on wet pavement.

After talking with Balachandran, Griffith attempted to measure the super elevation[3] at the Alexander curve, which he understood to be the area of concern. The city's equipment, however, did not provide conclusive information. So Griffith contacted Wiser Company ("Wiser") to do the surveying work required to determine super elevation. Griffith testified that Wiser concluded "that the road was not adequately super elevated according to our AASHTO[4] geometric design guidelines and that it would improve the safety of the  - - or improve the conditions of the road, safety of the road, if super elevation was added to it." In fact, the Wiser report stated "that super elevation was lacking throughout Rutherford Boulevard on both the county and city side."

In June 2005, it was decided to repave the road all the way to Broad Street. Griffith testified that "it's difficult to do it for one section, if you're talking about changing a grade or, in this case, adding super elevation to it and not do it to the others." He added:

> [Y]ou can't just go in and add 6 inches of pavement and call that super elevation, you have to gradually transition into it. And that would have gotten us back in the county side also. But luckily, the county was able to work with us and we were able to do the entire project.

The area of the future Bivins accident was not where the city or Wiser had been doing "the majority" of the study, but it was included to see "what the condition of the entire roadway was." At the time of the Bivins accident, July 5, 2005, the city was "gathering funding" and "moving forward with the project."

The trial court focused on the city's knowledge of the condition at the Bivins accident location: "The larger question, I think, is whether or not there was notice of this precise issue at this precise location. And, respectfully, I don't think we can find that based upon the accidents, perhaps, in fairness there were three." The court did note the 29 police accident reports for South Rutherford but again focused on the location of the Bivins accident. Due

---

[3]Super elevation is defined in the trial transcript as "where a road is banked to the inside of a curve in order to help a vehicle maintain control through that curve."

[4]American Association of State Highway and Transportation Officials. Griffith also testified that he knew of no standard that required a city to examine super elevation on roads as they are acquired through annexation.

to the greater curvature of the Alexander curve as opposed to the Bivins curve, the court felt that "it's incumbent upon us to separate the portions of the roadway." The court found that the city had no notice.

The appropriate inquiry on notice is, on July 5, 2005, the date of the Bivins accident, what did the city know and when did the city know it. The city knew that there had been over 20 reported accidents on South Rutherford in the last three years. The city knew that most of these accidents occurred when the pavement was wet, that the accidents occurred in both directions, and that two accidents had been fatal within the city limits. When it rained, police officers were ordered to show a presence on South Rutherford to slow down traffic between Church and Broad Street. The city knew of the newer pavement at the location of the Southern Container driveway, which was in the middle of much older pavement along South Rutherford. Perhaps most importantly, in June 2005 the city received a report from Wiser indicating that super elevation was lacking "throughout Rutherford Boulevard" and that the road was not adequately super elevated according to AASHTO design guidelines.

The city relies on *Sweeney v. State*, 768 S.W.2d 253 (Tenn. 1989), for the proposition that the notice of the dangerous condition must be for the particular spot along a roadway where the accident occurred. We disagree. *Sweeney* does not present the same factual scenario as the instant case because in *Sweeney* there were 23 accidents in the same curve. *Id*. at 256. Furthermore, we do not read the notice requirement of Tenn. Code Ann. § 29-20-203(b) as being as restrictive as the city suggests. Given the totality of the circumstances, we think that on and before July 5, 2005, the city had notice of the conditions that created safety problems on South Rutherford.

Did the safety problems constitute an unsafe or dangerous condition? The appellant does not construe the trial court's ruling as reaching a decision on that issue. The city argues that the trial court did address the issue, pointing to the following statement at the end of the opinion: "the fact that *we do not find fault on the City*, does not, in any way, diminish the loss that Ms. Bivins has suffered or the tragedy of the loss of life of Mr. Bivins." (Emphasis added). Whether a location is unsafe or dangerous is a question of fact. *Mosley v. McCanless*, 207 S.W.3d 247, 253 (Tenn. Ct. App. 2006). The trial court's ruling is devoid of any findings as to the existence or nonexistance of any unsafe or dangerous condition of the road at any location. We decline to find that the words "we do not find fault on the City," in the context that they were used, constitute a finding that no unsafe or dangerous condition existed.

The decision of the trial court is reversed and the matter is remanded to the trial court for findings of fact and a determination of whether the condition of the road constituted an unsafe or dangerous condition within the meaning of Tenn. Code Ann. § 29-20-203. Costs

of appeal are assessed against the appellee, the City of Murfreesboro, for which execution may issue if necessary.

_____

ANDY D. BENNETT, JUDGE