IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 31, 2022 Session

## BENNY VAUGHN v. COFFEE COUNTY, TENNESSEE

**Appeal from the Circuit Court for Coffee County**
**No. 45634    Vanessa Jackson, Judge**
_____

### No. M2021-00653-COA-R3-CV
_____

An inmate filed this case alleging that he sustained injuries while in the county jail after slipping on water in his cell. The trial court granted the county's motion for summary judgment, ruling that the county lacked actual or constructive notice of the alleged dangerous condition. Because we conclude that the inmate submitted sufficient proof to create a dispute of material fact as to the county's actual notice of the alleged dangerous condition, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

J. STEVEN STAFFORD, P.J., W.S. delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY ARMSTRONG, JJ., joined.

Drew Justice, Murfreesboro, Tennessee, for the appellant, Benny Vaughn.

Jeffrey R. Thompson and Gina S. Vogel, Knoxville, Tennessee, for the appellee, Coffee County, Tennessee.

### MEMORANDUM OPINION[1]

_____

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

# I. FACTUAL AND PROCEDURAL HISTORY

On December 19, 2018, Plaintiff/Appellant Benny Vaughn ("Plaintiff") filed a complaint against Defendant/Appellee Coffee County, Tennessee ("Defendant"), alleging that he fell and broke his hip in the Defendant's jail due to defective and leaking plumbing. On April 22, 2019, Defendant answered denying the material allegations in the complaint. Specifically, Defendant pleaded all defenses available to it under the Tennessee Government Tort Liability Act ("GTLA"), as well as asserted that it lacked actual or constructive knowledge of any unsafe or dangerous condition.

On October 6, 2020, Defendant filed a motion for summary judgment on two bases: (1) that Plaintiff could not present proof that Defendant had actual or constructive knowledge of a dangerous condition; and (2) that Plaintiff was more than 50% at fault for his injuries. In support of this motion, Defendant filed selections from Plaintiff's deposition, selections from the deposition of nurse Lynn Carter, affidavits from Jail Administrator Pam Freeman, correctional officers Chase Alford and Juan Flores, and certain jail records.

Defendant also filed a statement of undisputed facts, to which Plaintiff responded on February 19, 2021. The following facts were therefore undisputed for purposes of summary judgment:

1. Plaintiff was incarcerated in cell BD 114 of the Coffee County Jail in December 2017.
2. When Plaintiff was placed in cell BD 114, he noticed that there was water leaking from the seal where the toilet attaches to the cell floor.
3. The water had caused a stain to form on the cell floor.
4. Plaintiff testified that the leak was "slow," and it "took a while for the water to creep out."
5. The water did not cover the entirety of Plaintiffs floor; instead, the plaintiff described the water as follows: "it was long, and it come out of the commode and went toward the door."
6. Plaintiff testified that the toilet consistently leaked for a month leading up to the incident at issue.
7. A few days prior to the events giving rise to Plaintiffs alleged injuries in this case, Plaintiff slipped in the water in his cell and fell.
8. Plaintiff alleges to have reported the fall to Officer Juan Flores.
9. The fall which is the basis of this lawsuit occurred on December 21st or 22nd, 2017. [Plaintiff admitted this fact but alleged that the incident occurred on December 22.]

10. On the date Plaintiff said he fell, Plaintiff testified that he was "in a hurry" to get his food tray which was being delivered to his cell door by Officer Chase Alford.

11. According to the plaintiff, at the time of the fall, there was the "usual" amount of water on the floor which had leaked from the toilet.

12. Plaintiff acknowledges that there was an area in his cell that he could have traversed in order to avoid the water but chose not to because "he was in a hurry to eat."

13. Plaintiff knows the water was "mopped up once," but does not know if the toilet/water were addressed at any time while he was not in his cell.

14. Pam Freeman, Chase Alford, and Juan Flores have all attested that none of them saw [Plaintiff] slip and fall on the water located in his cell.

15. Lynn Carter, FNP treated Plaintiff while he was incarcerated at the Coffee County Jail and testified regarding his medical care.

16. Plaintiff had a history of psychosis and suicidal behavior during his stay at the Coffee County Jail.

17. On January 1, 2018, Plaintiff reported to a jail medical provider that "warlocks caused him to break his hip."

18. Nurse Carter testified that following surgery for his hip, Plaintiff was not compliant with doctors' orders.

19. For example, Plaintiff repeatedly pulled the staples out of his surgical cite, rubbed feces into his wound and generally exhibited poor hygiene which resulted in "extreme infection."

(Renumbered and record citations omitted).

The following allegations, however, Plaintiff denied by referencing portions of his own deposition:

1. The plaintiff never reported to Ms. Freeman, Mr. Alford, or Mr. Flores that he had a leaky toilet in his cell, that the leaky toilet caused water to accumulate, or that he had fallen on water in his cell.

2. Having no notice of the alleged water, none of them know the source of the water, or how long the water had been accumulated in his cell at the time Plaintiff alleges to have fallen and sustained injury on December 21 or 22, 2017.

3. Had any of them been made aware of the leaking toilet, or the water accumulation, it would have been reported to maintenance and there would be a record of it.

(Renumbered and record citations omitted).

In support of his denials, Plaintiff cited the following from his deposition:
Q. Okay. And did you talk to anybody at Coffee County Jail about that?

- 3 -

A. Yes, sir.

Q. Who did you talk to?

A. Several people.

Q. Okay. Can you name them?

A. They said -- Alford, Ms. Freeman. I told Ms. Freeman. She said she would have maintenance look at it.

* * *

Q. Okay. Did somebody come look at it?

A. Never did.

* * *

Q. So you talked to Ms. Freeman about it, and I think you also said you talked to Mr. Alford about it.

A. Yeah.

Q. What did he say?

A. That they was supposed to get to it.

* * *

Q. Okay. Other than these two conversations, did you ever talk to anybody else about it?

A. I even told maintenance myself, I think. They said, yeah, that they was supposed to come by there and look at it.

Q. Who did you talk to in maintenance?

A. Some older guy. I don't know what his name is. Some older guy. The guy that runs it, whatever his name is.

Q. So the head guy over maintenance is the one you talked to.

A. Yes, sir.

* * *

Q. Other than those conversations you have told me about, did you have any other conversations with anyone at the Coffee County Jail about the toilet issue.

A. I probably told the inmates. I don't know which one or who. Probably my friend. We would talk about it.

Q. Okay. But other than Ms. Freeman, Mr. Alford and the maintenance guy, did you talk about anybody else about the toilet issue?

A. No sir. Not that I can remember.

Elsewhere in his deposition, Plaintiff testified that he had also slipped a few days before the accident at issue and had informed Officer Flores of that fact; according to Plaintiff, however, Officer Flores "more or less blowed it off." Finally, Plaintiff also denied the following allegation on the basis that the jail's maintenance records were plainly incomplete and inadmissible: "Based on the maintenance records of the Coffee County Jail, there was no issues reported as to a toilet in BD 114 for the month of December in 2017."

On February 23, 2021, Defendant filed a statement containing additional undisputed material facts, which alleged that:

1. On December 18, 2017, Plaintiff filed a medical sick call request complaining that the whole pod (including his cell) was flooded with water. A [] nurse responded to the request stating, "Mr. Vaughn the officers reported that you keep flooding your cell by stuffing your clothes in the toilet. Please refrain from doing that."
2. Minutes later, Plaintiff filed a grievance directed to the officers complaining of the water in his cell. The grievance was answered on December 18, 2017 at 5:07pm, indicating that Plaintiffs cell "has been cleaned and is free of any access water."
3. Plaintiff testified that the fall which is the basis of this lawsuit occurred on December 21, 2017.
4. However, the fall which resulted in Plaintiff's hip fracture actually occurred on or before December 20, 2017.

(Record citations omitted). Plaintiff did not respond to these additional facts.

On March 4, 2021, the trial court entered an order granting Defendant's motion. In its order, the trial court noted that Plaintiff testified in his deposition that he informed Ms. Freeman, Officer Alford, and Officer Flores of the leaky toilet, but that he could not recall the dates of these conversations. But the court further noted that these individuals had stated via affidavit that they had not been made aware of the issues. As such, the trial court concluded that

> Plaintiff's uncorroborated deposition testimony does not overcome the sworn statements of these three jail employees. In the absence of any other proof, there is no material evidence from which the Court could find that these three employees (or any other employee of the Defendant) had actual or constructive knowledge of a dangerous condition in the Plaintiff's cell.

The trial court next referenced the additional undisputed facts submitted by Defendant,

> [T]he only notice to Defendant of any dangerous condition occurred on December 18, 2017. Officers responded to that notice and Plaintiff's cell was cleaned and was free of excess water at 5:07 p.m. on that same day. Officers reported that the water from the toilet in Plaintiff's cell was a result of Plaintiff stuffing his clothes into the toilet. No other reports of a water leak or water problem in Plaintiff's cell were made prior to his fall.
>
> The Court finds that there is no material evidence in the record from which the Court could conclude that the Defendant's employees at the Coffee County Jail, exercising reasonable care and diligence, should have

- 5 -

discovered the alleged dangerous condition (water on floor of Plaintiff's cell), or that they had actual knowledge thereof.

The trial court further ruled that the issue of comparative fault was moot. A final order was entered dismissing Plaintiff's claim with prejudice on May 12, 2021. This appeal followed.

## II. ISSUES PRESENTED

Plaintiff raises a single issue in this case:

In this premises liability case, the trial court granted summary judgment to the Defendant, Coffee County, by holding that the Defendant's witnesses were more believable than the Plaintiff, and consequently that the Plaintiff could not show that the Defendant had any notice of the unsafe condition. Did the trial court wrongly grant summary judgment?

In the posture of appellee, Defendant frames the issues as follows:

1. Whether the trial court correctly granted summary judgment to the defendant on plaintiff's negligence claim when the undisputed, material facts in the record demonstrated that the defendant did not have constructive or actual knowledge of the alleged dangerous condition.
2. Whether summary judgment to the defendant is proper on additional, alternative grounds, when the undisputed, material facts in the record demonstrate that the defendant did not breach a duty of care owed to the plaintiff.
3. Whether summary judgment to the defendant is proper on additional, alternative grounds, when the undisputed, material facts in the record demonstrate that plaintiff was more than fifty percent or more at fault for his injuries.

## III. STANDARD OF REVIEW

The trial court granted Defendant's motion for summary judgment. Summary judgment is appropriate where the moving party has demonstrated that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). "We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness." *Rye*, 477 S.W.3d at 250 (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). The burden is upon the moving party to establish that its motion satisfies these requirements. *See Staples v. CBL Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000). Under the summary judgment standards established in *Rye*, when the moving party does not bear the burden of proof at trial, it

"may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." **Rye**, 477 S.W.3d at 264.

## IV. ANALYSIS

## A.

There is no dispute in this case that Defendant enjoys governmental immunity under the GTLA. Tennessee Code Annotated section 29-20-101 *et seq.* Tennessee Code Annotated section 29-20-203(a), provides, however, that: "Immunity from suit of a governmental entity is removed for any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity." Tennessee Code Annotated section 29-20-204(a) also provides: "Immunity from suit of a governmental entity is removed for any injury caused by the dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement owned and controlled by such governmental entity." The removal of immunity only applies under either statute, however, where "constructive and/or actual notice to the governmental entity of such condition be alleged and proved[.]" Tenn. Code Ann. §§ 29-20-203(b), 204(b). This Court has previously held that "[t]he section of the GTLA which removes sovereign immunity for injuries caused by dangerous or defective structures essentially codifies [the] common-law" rule that:

> To sustain a claim for premises liability, a plaintiff must prove (1) that the dangerous or defective condition was caused or created by the owner, operator, or his agent, or (2) that the condition was created by a third party and the owner, operator, or agent had actual or constructive notice of the condition before the accident.

**Brown v. Chester Cnty. Sch. Dist.**, No. W2008-00035-COA-R3-CV, 2008 WL 5397532, at *2 (Tenn. Ct. App. Dec. 30, 2008) (citing **Martin v. Washmaster Auto Ctr.**, 946 S.W.2d 314, 318 (Tenn. Ct. App. 1996)). In this case, Defendant argues that Plaintiff failed to submit proof that it created the dangerous condition or had either actual or constructive notice of the dangerous condition at issue so as to remove governmental immunity.

The Tennessee Supreme Court has described actual notice as "knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts." **Kirby v. Macon Cnty.**, 892 S.W.2d 403, 409 (Tenn. 1994) (quoting **Texas Co. v. Aycock**, 190 Tenn. 16, 227 S.W.2d 41, 46 (Tenn. 1950)). Constructive notice, in contrast, is defined as "information or knowledge of a fact imputed by law to a person (although he may not actually have it) because he could have discovered the fact by proper diligence, and his situation was such

- 7 -

as to cast upon him the duty of inquiring into it." *Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 351–52 (Tenn. 2014) (quoting *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 15 (Tenn. 1997)). Constructive notice may be established by showing that a dangerous or defective condition existed for such a length of time that a property owner, in the exercise of reasonable care, should have become aware of it. *Parker*, 446 S.W.3d at 352 (citing *Simmons v. Sears, Roebuck & Co.*, 713 S.W.2d 640, 641 (Tenn. 1986)). Constructive notice may also be established by showing that the dangerous condition resulted from "'a pattern of conduct, a recurring incident, or a general or continuing condition.'" *Parker*, 446 S.W.3d at 352 (quoting *Blair v. West Town Mall*, 130 S.W.3d 761, 765 (Tenn. 2004)).

In this appeal, Plaintiff asserts that he put forth specific evidence that Defendant had actual knowledge of the dangerous condition, citing his own deposition testimony that he had informed multiple employees of the Defendant that his floor was flooded before his injury. We agree. Here, the trial court was faced with directly competing proof. According to Plaintiff's deposition, he informed at least Ms. Freeman and Officer Alford of the water on the floor before his fall. Ms. Freeman and Officer Alford denied that these conversations took place. But because there was directly conflicting testimony on this issue, a credibility issue was created. And issues that turn on credibility generally cannot be decided via summary judgment. *See Byrd v. Hall*, 847 S.W.2d 208, 216 (Tenn. 1993), *holding modified by Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1 (Tenn. 2008), and *holding modified by Rye*, 477 S.W.3d 235 ("When a material fact is in dispute creating a genuine issue, when the credibility of witnesses is an integral part of the factual proof, or when evidence must be weighed, a trial is necessary because such issues are not appropriately resolved on the basis of affidavits."); *Vaulton v. Polaris Indus., Inc.*, No. E2021-00489-COA-R3-CV, 2022 WL 628502, at *13 (Tenn. Ct. App. Mar. 4, 2022) ("At the summary judgment stage, we do not weigh the evidence, nor do we engage in credibility determinations regarding the deponents."). *But see Hashi v. Parkway Xpress, LLC*, No. M2018-01469-COA-R3-CV, 2019 WL 5431858, at *4 (Tenn. Ct. App. Oct. 23, 2019) (quoting *Hepp v. Joe B's, Inc.*, No. 01A01-9604-CV-00183, 1997 WL 266839, at *3 (Tenn. Ct. App. May 21, 1997) ("[T]o warrant a *denial* of summary judgment, credibility questions 'must r[ise] to a level higher than the normal credibility questions that arise whenever a witness testifies.'").

Defendant asserts, however, that a crucial component is missing from Plaintiff's deposition testimony—when he had these conversations with Ms. Freeman and Officer Alford. And because the proof was undisputed that a flooding had occurred on December 18 and been cleaned up by Defendant, there was no proof that Defendant had any notice of the dangerous condition that existed on December 20, the date of Appellant's injury. Thus, Defendant asks us to infer from the proof presented that Plaintiff may have had these conversations with Ms. Freeman and Officer Alford prior to December 18, when the first flooding was reported and ameliorated, and not in the time between December 18 and December 20.

Respectfully, we cannot agree. Under Tennessee's summary judgment standard, when there are inferences to be drawn from the facts, we are required to draw all reasonable inferences in favor of the non-moving party. ***Vanquish Worldwide, LLC v. Sentinel Ins. Co., Ltd.***, No. E2020-01650-COA-R3-CV, 2022 WL 189791, at *2 (Tenn. Ct. App. Jan. 21, 2022) (citing ***Parker v. Holiday Hosp. Franchising, Inc.***, 446 S.W.3d 341, 346–47 (Tenn. 2014)) ("Because the party moving for summary judgment bears the burden of proof, we view the evidence in favor of the non-moving party by resolving all reasonable inferences in its favor and discarding all countervailing evidence."). Here, Plaintiff responded to Defendant's motion for summary judgment by pointing to specific proof that he informed Defendant's employees about the water that he asserts caused him to slip and fall. Moreover, he testified that after he told these individuals about the problem, no one ever came to look at it or fix it. So, Plaintiff's proof taken with all the reasonable inferences in his favor, was that his conversations concerning the water on the floor must not have been in reference to the incident on December 18 because that water was cleaned up by Defendant's employees. In other words, it is reasonable to infer from Plaintiff's testimony that his conversation with Ms. Freeman and Officer Alford occurred between the December 18 clean up and his December 20 fall. Thus, he presented proof that Defendant had actual notice of the condition that he alleged caused him to fall and be injured. This proof creates a genuine dispute of material fact as to the issue of actual notice, making summary judgment on this issue inappropriate.

Plaintiff also contends that the trial court erred in granting summary judgment without addressing his argument that Defendant had constructive notice. Defendant does not address Plaintiff's contention that the trial court failed to specifically address this component of Plaintiff's argument. Instead, Defendant argues that Plaintiff failed to present proof to establish constructive notice. As previously discussed, however, Plaintiff may overcome Defendant's motion for summary on the issue of notice by establishing *either* actual or constructive notice. ***Brown***, 2008 WL 5397532, at *2; *see also* ***Reed v. Greene Cnty.***, No. E2004-00090-COA-R3CV, 2005 WL 100843, at *5 (Tenn. Ct. App. Jan. 19, 2005) (noting that the defendant must prove that the plaintiff had "neither actual or constructive notice"). We have concluded that Plaintiff pointed to specific proof in the record to establish a genuine dispute of material fact as to Defendant's actual notice of the alleged dangerous condition at issue. As such, Plaintiff need not establish that Defendant also had constructive notice. We therefore pretermit consideration of that issue.

**B.**

Defendant next asserts that this Court should affirm the trial court's grant of summary judgment on a different basis—either lack of duty or comparative fault. It is true that this Court may sometimes affirm a trial court's summary judgment ruling on a different basis than that relied upon by the trial court. *See* ***Bobo v. City of Jackson***, 511 S.W.3d 14, 26 n.14 (Tenn. Ct. App. 2015) ("[W]e are entitled . . . to affirm the entry of summary judgment on grounds that differ from those forming the basis of the trial

court's decision."). We note, however, that as an appellate court, our jurisdiction is appellate only and "we are constrained to only review those issues that have been decided by the trial court in the first instance." ***Whalum v. Shelby Cnty. Election Comm'n***, No. W2013-02076-COA-R3-CV, 2014 WL 4919601, at *3 (Tenn. Ct. App. Sept. 30, 2014) (citing ***Reid v. Reid***, 388 S.W.3d 292, 294 (Tenn. Ct. App. 2012). As a result, we often decline to address issues that were pretermitted by the trial court; under those circumstances, we will remand to the prior court for consideration of the pretermitted issue. *See, e.g.,* ***Payne v. CSX Transportation, Inc.***, 467 S.W.3d 413, 438 (Tenn. 2015) ("It is not unusual for this Court to instruct a trial court or an intermediate appellate court to address unresolved or pretermitted issues on remand, provided that the issues have not been waived."). Here, the trial court specifically pretermitted Defendant's argument concerning comparative fault as moot. As such, we conclude remand for the trial court to resolve this previously pretermitted issue is most appropriate.

Although the result is the same, we decline to rule on Defendant's argument concerning lack of duty on a different basis: this was not an argument raised by Defendant in its motion for summary judgment. With a few exceptions not relevant in this case, arguments not raised in the trial court will not be entertained on appeal. *See, e.g.,* ***City of Memphis v. Shelby County, Tennessee***, 469 S.W.3d 531, 560 (Tenn. Ct. App. 2015) (citing ***Lawrence v. Stanford***, 655 S.W.2d 927, 929 (Tenn. 1983)) (holding that "[i]t has long been the general rule that questions not raised in the trial court will not be entertained on appeal"). Because Defendants did not raise lack of duty as a basis for summary judgment, we will not consider this argument on appeal.

## V. CONCLUSION

The judgment of the Coffee County Circuit Court is reversed, and this cause is remanded for further proceedings. Costs of this appeal are taxed to Appellee Coffee County, Tennessee, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE