# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 2, 2024 Session

## JOHN MILTON ARLEDGE v. DARL SMITH, ET AL.

**Appeal from the Circuit Court for Warren County**
**No. 21-CV-1416     Robert E. Lee Davies, Senior Judge**

_____

### No. M2022-01471-COA-R3-CV
_____

John Milton Arledge ("Arledge") filed a complaint seeking to quiet title to property he purported to own and the ejection of Darl Smith ("Smith") from the disputed property. Smith filed a motion for summary judgment, which the Warren County Circuit Court ("the Trial Court") granted. Arledge appeals. Discerning no reversible error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which W. NEAL MCBRAYER and JEFFREY USMAN, JJ., joined.

Keith S. Smartt, McMinnville, Tennessee, for the appellant, John Milton Arledge.

Erika R. Barnes and T. Dylan Reeves, Nashville, Tennessee, for the appellee, Darl Smith.

Robert R. Hattaway, Smithville, Tennessee, Pro Se.

# OPINION

## Background

On May 25, 2021, Arledge filed a complaint in the Trial Court against Smith and Robert R. Hattaway ("Hattaway"), individually and as trustee for the Robert R. Hattaway Living Trust ("the trust"), seeking to quiet title to 7629 Jacksboro Road, McMinnville, Tennessee 37110 ("the disputed property") and to eject Smith from the disputed property. Arledge alleged that he had acquired title to the property in 1977 by warranty deed and that he had executed a deed conveying the property to "John Milton Arledge, Trustee, for the Robert R. Hattaway Living Trust" in 2012. Arledge explained that he eventually filed chapter 12 bankruptcy in the U.S. Bankruptcy Court for the Eastern District of Tennessee ("the bankruptcy court") on October 3, 2015. His bankruptcy case was converted to a chapter 13 and then finally a chapter 7 bankruptcy.

According to Arledge, the trustee for the bankruptcy estate, Trudy Edwards, sought to set aside certain deeds and conveyances made by Arledge. As a result, the bankruptcy court entered an order on November 18, 2016, declaring that Arledge's transfer of the disputed property to "John Milton Arledge, Trustee, for the Robert R. Hattaway Living Trust" to be null and void and that the disputed property was property of the Arledge bankruptcy estate ("the first bankruptcy order"). He further alleged:

> On or about November [3]0, 2016, an Agreed Order (hereinafter "Agreed Order") was entered by the United States Bankruptcy Court amending the November 1[8], 2016 Order to reflect consent by the Robert R. Hattaway Living Trust through its then, sole Trustee, Jeffrey Scott Hughes, as well as remaining parties in interest to include additional property transfers to John Milton Arledge Trustee for the Robert R. Hattaway Living Trust as being without consideration and, thus, fraudulent and properly set aside in prior order of this court. The Agreed Order is recorded at Record Book 403, page 655, ROWCT and a copy is attached hereto as "Exhibit #4."
> In said Agreed Order, the Trustee of the Robert R. Hattaway Living Trust specifically consented to the voiding of the transfers of real property as described therein.

The "Agreed Order" reflected that the trust had agreed to convey its interest in a 131.04-acre tract of land back to Arledge ("the second bankruptcy order").

The 131.04-acre tract describes a different piece of property than the disputed property. However, the second bankruptcy order referenced and amended "Document #39", which is the first bankruptcy order declaring Arledge's transfer of the disputed property to the trust null and void. The first bankruptcy order, or "Document #39", is mentioned in the second bankruptcy order here:

Accordingly, it is ORDERED that <u>the prior Order of the Court filed as Document #39 shall be amended to reflect that the parties in interest have consented to the voiding of the transfers of both real and personal property as described therein.</u> Further, it is ORDERED that the real property consisting of 131.04 acres as described in Record Book 323, page 211, Register's Office of Warren County, Tennessee, shall be divested from the Robert R. Hattaway Trust and vested in John Milton Arledge by Quitclaim Deed from the Robert R. Hattaway Trust and further, said real property shall be sold in accordance with the Order granting the Trustee's Amended Motion to Sell Property Free and Clear of all Liens (Doc # 142).

(Emphasis added.) Arledge's bankruptcy case was discharged in December 2017, and the disputed property was neither sold nor transferred during the bankruptcy process.

Arledge claimed that Hattaway, "purporting to act as Trustee of the Robert R. Hattaway Living Trust," executed a deed purporting to convey the disputed property to Smith on March 3, 2021. He claimed that the trust had no title to the disputed property at that time, given that the bankruptcy court determined that the transfer was null and void. He therefore claimed that he had retained sole and exclusive possession of the disputed property since his bankruptcy discharge, except for a period of time when his daughter lived there as a tenant. He also alleged that Smith had either actual or constructive notice of the first bankruptcy order nullifying the property transfer.

Arledge requested that the Trial Court restrain Smith from coming upon the property; taking any further actions upon the property; and from conveying, encumbering or otherwise affecting Arledge's title. He requested that the Trial Court adjudge him as the lawful owner of the disputed property, bar Smith from claiming an interest in the disputed property, and declare Smith's warranty deed null and void. He further sought compensatory damages, punitive damages, costs, disbursements, and attorney's fees. In June 2021, Arledge filed a lien *lis pendens*, pursuant to Tenn. Code Ann. § 20-3-101.

On June 28, 2021, Smith filed an answer and cross-claim. Smith denied the substance of Arledge's claims and alleged that a title search conducted prior to his purchase of the disputed property did not reveal the first bankruptcy order. Smith claimed that the Warren County tax records reflected that the owner of the disputed property was Arledge as trustee of the trust. As an affirmative defense, Smith claimed that he was a bona fide purchaser for value and had purchased the disputed property in good faith. He also claimed that Arledge's claims were barred by waiver, estoppel, ratification, fraud, and/or unclean hands. Regarding his cross-claim, Smith alleged breach of warranty, negligent misrepresentation, and fraud against Hattaway.[1]

---

[1] Mr. Hattaway, individually and as trustee of the trust, filed a motion to dismiss and answer, claiming that

- 3 -

On October 27, 2021, Smith filed a motion for summary judgment, a memorandum of law in support, and a statement of undisputed material facts. Smith argued that Arledge had failed to properly record the first bankruptcy order in the disputed property's chain of title and, therefore, Smith had no constructive notice of Arledge's interest in the disputed property at the time he purchased it. Because he was a purported bona fide purchaser, Arledge could not prevail on his quiet title claim against him.

Smith asserted the following material facts, in relevant part, as undisputed:

4. On or about February 2, 2012, Plaintiff conveyed by warranty deed title to the Property to The Robert R. Hattaway Living Trust. (Exhibit 2.)

5. The warranty deed referred to in Statement (4) was recorded on February 2, 2012, in the Register's Office for Warren County, Tennessee, at Record Book 292, Page 266. (Exhibit 2.)

6. On or about March 3, 2021, The Robert R. Hattaway Living Trust conveyed by warranty deed title to the Property to Darl Smith. (Exhibit 3.)

7. The warranty deed referred to in Statement (6) was recorded on March 3, 2021, in the Register's Office for Warren County, Tennessee, at Record Book 525, Page 830. (Exhibit 3.)

8. Darl Smith paid $120,000.00 to The Robert R. Hattaway Living Trust as consideration for title to the Property. (Exhibit 3; Exhibit 7, ¶ 3.)

9. The Robert R. Hattaway Living Trust obtained legal title to 7629 Jacksboro Road, McMinnville, Tennessee 37110, on February 2, 2012. (Exhibit 2.)

10. On November 18, 2016, the United States Bankruptcy Court for the Eastern District of Tennessee issued an order voiding and nullifying the conveyance of the Property from Plaintiff to The Robert R. Hattaway Living Trust. (Exhibit 4 at p.8.)

11. Darl Smith was not a party to, or involved in, Plaintiff's bankruptcy proceedings in the United States Bankruptcy Court for the Eastern District

---

the Trial Court lacked subject matter jurisdiction and that the bankruptcy court had retained jurisdiction over the matter. In May 2022, the Trial Court entered an order denying Mr. Hattaway's motion to dismiss.

of Tennessee (Case Nos. 4:15-BK-14347-SDR; 4:16-ap-01021-SDR). (Exhibit 7, ¶ 6; Exhibit 4 at p.8; Exhibit 5.)

12. Plaintiff did not file, in the Warren County Register's Office, a lien *lis pendens* relating to his bankruptcy proceedings in the United States Bankruptcy Court for the Eastern District of Tennessee (Case Nos. 4:15-BK-14347-SDR; 4:16-ap-01021-SDR). (Exhibit 6, ¶¶ 11-13, 15.)

13. Plaintiff did not file, register, or record a stand-alone copy of the November 18, 2016 bankruptcy order in the Warren County Register's Office. (Exhibit 6, ¶¶ 11-15.)

14. Plaintiff did not file, register, or record a stand-alone copy of the November 18, 2016 bankruptcy order in the Warren County Register's Office under the name of The Robert R. Hattaway Living Trust. (*See* Exhibit 6, ¶¶ 11-15.)

15. Plaintiff attached an uncertified copy of the November 18, 2016 bankruptcy order to a warranty deed he conveyed to Jerry A. Blankenship and Elizabeth Blankenship. (Exhibit 4 at p.8.)

16. The warranty deed Plaintiff conveyed to Jerry A. Blankenship and Elizabeth Blankenship did not reference the February 2, 2012 conveyance from Plaintiff to The Robert R. Hattaway Living Trust, as recorded in the Warren County Register's Office at Record Book 292, Page 266. (Exhibit 4.)

17. The Robert R. Hattaway Living Trust was the record owner of 7629 Jacksboro Road, McMinnville, Tennessee 37110, from [ ] November 18, 2016, to March 3, 2021. (Exhibit 2; Exhibit 3; Exhibit 6, ¶ 12.)

18. Darl Smith is the current record owner of 7629 Jacksboro Road, McMinnville, Tennessee 37110. (Exhibit 3; Exhibit 7, ¶ 5.)

19. On or about June 11, 2021, Plaintiff filed a lien *lis pendens* in the Warren County Register's Office relating to the underlying case (*John Milton Arledge v. Darl Smith et al.*, Case No. 21-CV-1416).

Arledge filed a response, disputing items 11, 12, 14, 17, and 18. With respect to item 11, Arledge admitted that Smith was not a party to his bankruptcy proceeding but claimed that Smith was involved to the extent he had attended and bid at Arledge's and Hattaway's respective bankruptcy proceedings. In disputing item 12, the assertion that he did not file a lien *lis pendens* in the Warren County Register's Office, Arledge claimed the

following: "Plaintiff did not file a lien lis pendens regarding Plaintiff's bankruptcy. Plaintiff's Bankruptcy Trustee, Trudy Edwards filed the 'Agreed Order As To Interest of Robert R Hattaway Trust' [the second bankruptcy order] in the Register's Office for Warren County at Record Book 403 page 655 and a copy of the 'Order to Sell Free and Clear of All Liens' in Plaintiff's bankruptcy at Lien Book 25, page 697. (Moore dep. Exhibits 7 and 10)."

With respect to item 14, the assertion that Arledge did not file, register, or record a stand-alone copy of the bankruptcy order in the Warren County Register's Office under the name of the trust, Arledge stated: "Admitted as to a stand-alone copy. A copy of the November 18, 2016 Order [the first bankruptcy order] was attached to a warranty deed to Jerry A. Blankenship and Elisabeth Blankenship set forth as Exhibit 4. Reference to the November 18, 2016 Bankruptcy Order was made in 'Agreed Order As To Interest of Robert R. Hattaway Trust' [the second bankruptcy order] in the Register's Office for Warren County at Record Book 403 page 655." Concerning items 17 and 18, Arledge disputed Smith's assertions that the trust was the record owner from November 18, 2016 to March 3, 2021, and that Smith was the current owner. He again relied on his claim that the second bankruptcy order was recorded in the Warren County Register's Office at Record Book 403, page 655.

Arledge then filed his own statement of undisputed material facts, in relevant part, including:

> 1. Ryan Moore represented Darl Smith in real estate transactions (Moore Dep. p. 3, lines 9 through 13).
>
> 2. Mr. Moore performed a title search and a real estate closing in his capacity as attorney for Darl Smith (Moore Dep. p. 8 line 23).
>
> 3. At the real estate closing, Defendant Hattaway provided a document described as "certificate of trust" (Moore Dep. p. 13, line 9).
>
> 4. The "certificate of trust" agreement was unsigned by Defendant Hattaway (Moore Dep. p. 14, lines 15-18).
>
> 5. The "certificate of trust" agreement indicated that Trustee Jeffrey Scott Hughes resigned as trustee of the trust with his signature acknowledged and dated August 7, 2020 (Moore Dep. p. 15, line 6).
>
> 6. No documentation was provided to show the existence of a serving trustee for the Hattaway Trust following the resignation of Jeffrey

Scott Hughes, nor to show that Mr. Hattaway was appointed as trustee (Smith Dep. p. 15, line 24; p. 16, line 11).

7.  In his search, Mr. Moore found and reviewed a document recorded at Record Book 403, p. 655 titled "Agreed Order as to Interest of Robert R. Hattaway Trust" (Exhibit 8 to Moore deposition) which referenced a judgment in the U.S. Bankruptcy Court. "Document #39". (Moore dep. p. 23, line 17)

8.  The Agreed Order as to the interest of the Robert R. Hattaway Trust was approved for entry by Jeffrey Scott Hughes, Trustee, of the Robert R. Hattaway Trust (Moore dep. P.16 line____.)

9.  The document in part read further accordingly it is ordered that the prior order of the court filed as document number 39 shall be amended to reflect the parties in interest have consented to the voiding of the transfers of both real and personal property as described therein. (Moore Dep. pg. 24, line 8-17).  The agreed order was executed by Jeffrey Scott Hughes trustee of the Defendant Robert R. Hattaway trust (Moore Dep., page 25, line 16).

10.  Mr. Moore did not independently inquire as to Doc. #39 (Moore Dep. p 26, line 21-24).

11.  The judgment referenced (Document 39) voids transfers of real estate and personal property as described therein (Moore Dep. p. 25, line 2-6).  Mr. Moore, in the course of his search, reviewed a quitclaim deed from Jeffrey Scott Hughes as trustee of the Defendant Robert R. Hattaway living trust, dated December 1, 2006, in favor of John Milton Arledge (Moore Dep. p. 27, line 6-15).

* * *

19.  Defendant Smith was personally acquainted with both the Plaintiff and Defendant Hattaway (Smith Dep., p. 30)

20.  Defendant Smith was aware of both the Plaintiff and Defendant Hattaway's bankruptcy cases (Smith Dep. p. 30 line 11-18).

21.  Defendant Smith attended a joint bankruptcy auction of the John Milton Arledge and Robert Roy Hattaway bankruptcy estates (Smith Dep. p.30, lines l9-20 page 47 beginning at line 5).

22. At the joint auction, Defendant Smith bid on Defendant Robert Hattaway's house (Smith Depo. p. 30, line 24; p. 31, line 3; p. 47, lines 19-25).

23. The Property at 7926 Jacksboro Rd. was advertised for sale at the bankruptcy auction (Smith Dep. p. 33, lines 5-13).[2]

Smith disputed several of Arledge's statements, in whole or in part. For example, with respect to item 6, Smith admitted that no documentation demonstrated that Hattaway was appointed as trustee of the trust, but stated that Hattaway orally told Smith's title attorney, Ryan Moore ("Moore"), that he was the trustee. Concerning items 7 and 9, Smith disputed that Moore found the second bankruptcy order in the course of his title search because the document did not contain the same legal description as the disputed property and was outside the chain of title. Although Smith acknowledged that Moore did not "independently review the docket sheet and orders" of the bankruptcy court, he disputed that Moore did not search for "Doc #39" within the disputed property's chain of title. Concerning item 20, Smith admitted that he knew about Arledge's and Hattaway's respective bankruptcy auctions, but disputed any inference that he was aware of any specific information related to those bankruptcy proceedings.

Despite Smith's assertion that Moore did not discover the second bankruptcy order during his title search, Moore acknowledged as much in an affidavit. In his affidavit, Moore stated: "My title search revealed one court order against The Robert R. Hattaway Living Trust that concerned a 131-acre tract of land as described in Record Book 323, Page 211 of the Warren County Register's Office."

A hearing on Smith's summary judgment motion was held on May 17, 2022. The Trial Court granted his motion in a judgment entered on May 23, 2022. The Trial Court made the following findings of fact and conclusion of law:

On October 3, 2015, Arledge filed for bankruptcy. The conveyance to the Hattaway Trust, along with other real property, was challenged by the bankruptcy trustee. This resulted in an order from the bankruptcy court entered on November 18, 2016 which voided the transfer from Arledge of all of the real property, including the subject property, to the Robert Hattaway Living Trust.

After Arledge's discharge in bankruptcy, he conveyed by warranty deed three tracts of land (which did not include the subject property) to Jerry and Elizabeth Blankenship. Arledge attached an uncertified copy of the

---

[2] We have limited our reference to facts from both parties' statements of undisputed material facts to those that are relevant to arguments made before the Trial Court and this Court on appeal.

November 18, 2016 bankruptcy order to the warranty deed that he conveyed to the Blankenship's, but the deed did not reference the February 2, 2012 conveyance from Arledge to the Robert Hattaway Living Trust. Arledge never filed or recorded a copy of the November 18, 2016 bankruptcy order in the Warren County Register's Office, nor did he record a copy of said order in the Register's Office under the name of the Robert R. Hattaway Living Trust.

On March 3, 2021, the Robert R. Hattaway Living Trust conveyed by warranty deed the subject property to Darl Smith in exchange for $120,000 paid to the Robert R. Hattaway Living Trust. This warranty deed was recorded on March 3, 2021 in the Register's Office for Warren County. Darl Smith was not a party to, or involved in, Arledge's bankruptcy proceedings in the United States Bankruptcy Court for the Eastern District of Tennessee. The Robert R. Hattaway Living Trust was the record owner of the subject property from November 18, 2016 to March 3, 2021.

Arledge never filed a lien *lis pendens* in the Warren County Register's Office pertaining to the order of the United States Bankruptcy Court until June 11, 2021, more than ninety days after Darl Smith's purchase of the subject property.

\* \* \*

In this case, Smith purchased the subject property for $120,000 and as a result is a bona fide purchaser for value. Smith also retained Attorney Ryan Moore to conduct a title search prior to the purchase. The title search failed to reveal the bankruptcy order voiding the transfer from Arledge to the Hattaway Family Trust because it was not properly recorded in the chain of title to this subject property, or as a stand-alone instrument. Moreover, there is no factual dispute raised by Arledge that Smith had actual notice of the bankruptcy court's order of November 18, 2016. Arledge raises three additional facts which he claims provided Smith with actual notice:

1) Smith's general knowledge of Arledge's and Hattaway's bankruptcy auctions that occurred five years before Smith purchased the property;

2) "Prior business dealings" with Arledge and Hattaway; and

3) Knowledge that a tenant was occupying a house located on the subject property.

- 9 -

None of these facts support a conclusion that Smith had actual notice of the bankruptcy court's order of November 18, 2016, or that Arledge actually owned the property.

Since Smith was not a party to the bankruptcy proceedings and did not have actual notice of the bankruptcy order, this case turns on the question of whether there was a properly registered instrument that would give him constructive notice. As already indicated, the title search on the subject property revealed that Arledge held title to the property when he conveyed it to the Hattaway Trust. However, there were no other conveyances or encumbrances against the subject property. The November 18, 2016 bankruptcy order did not turn up in the title search for the subject property because Arledge only attached it as an exhibit to a conveyance of other property that he made to the Blankenship's. Since Arledge failed to register the bankruptcy order under the name of the Hattaway Trust, the title search revealed that the Hattaway Trust was the record owner of the property, even though the bankruptcy court had voided the conveyance to the Hattaway Trust.

Arledge argues there is a genuine dispute of material fact based upon Smith's attendance at the bankruptcy auction and a bankruptcy court order attached to a deed conveying a different tract of real property. Apparently, there was a bankruptcy auction years before the conveyance to Smith. At one point in time there was a sign placed on the subject property that indicated there was a bankruptcy auction. It did not advertise the land for sale as part of Arledge's bankruptcy proceeding. The sign was posted for only one or two days and then it was removed. Prior to the auction and after, the subject property was recorded in the name of the Hattaway Trust. It was not put up for sale at the bankruptcy auction. Again, these facts fail to demonstrate that the property was transferred to a new owner or that some other third-party purchased it.

Arledge also contends that Smith was put on inquiry notice based upon the bankruptcy order entered in Arledge's bankruptcy proceeding, which was attached to a deed describing a completely different tract of property. As Attorney Moore indicated, while searching the title on the subject property, he discovered the bankruptcy order of November 18, 2016, but it concerned a one hundred- and thirty-one-acre tract of land. It made no mention of the subject property at 7629 Jacksboro Road, McMinnville, Tennessee. Arledge argues inquiry notice required Attorney Moore to search through other bankruptcy records that were outside the chain of title.

As our Supreme Court held in <u>Yates v. Chandler</u>, 38 S.W.2d 70 (Tenn. 1931):

> It is the general rule that the record of an instrument out of line of title is not constructive notice of the contents of the instrument, or in other words, the record of an instrument is notice only to those persons who are compelled to deraign title through it.
>
> It is generally held that the record of an instrument conveying certain property is not notice of the contents of the instrument to one holding under a conveyance of other property belonging to the same grantor.

<u>Id.</u> *71.

Since Arledge failed to record the bankruptcy order in the subject property's chain of title, Smith cannot be charged with inquiry notice because it would impose an intolerable burden to require a title searcher "to . . . examine all conveyances outside the record chain of title." <u>Amos v. Carson</u>, 210 S.W.2d 677, 680 (Tenn. 1948). Accordingly, Smith cannot be charged with inquiry notice as a matter of law.

On August 1, 2022, Smith voluntarily dismissed his cross-claim against Hattaway, individually and as trustee. He also filed a motion for entry of judgment, pursuant to Tennessee Rule of Civil Procedure 54.02, now that all claims against or asserted by him had been resolved. He requested that the final judgment provide that the lien *lis pendens* recorded in June 2021 by Arledge be released so that he could record a copy of the final judgment to remove the cloud on his title to the disputed property. On September 16, 2022, the Trial Court granted his motion and released the lien *lis pendens*, stating: "Given that the Court granted Smith's motion for summary judgment and dismissed the claims against him, and that Smith has voluntarily dismissed his cross-claim against Defendant Robert R. Hattaway, the Court finds that there is no just reason for delaying the entry of a final judgment as to Defendant Smith." Arledge timely appealed.

## Discussion

We restate and consolidate Arledge's issues into one dispositive issue: whether the Trial Court erred in granting summary judgment to Smith given that genuine issues of material fact exist as to whether Smith had inquiry notice of Arledge's ownership of the disputed property.

- 11 -

This matter was decided by summary judgment. Regarding the standard of review for cases disposed of by summary judgment, the Tennessee Supreme Court has instructed:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

***

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id*. When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*[*, Ltd. v. Zenith Radio Corp.*], 475 U.S. [574,] 586, 106 S.Ct. 1348 [89 L.Ed.2d 538 (1986)]. The nonmoving party must

demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Ctr. of Memphis, MPLLC,* 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

Both parties agree that the first bankruptcy order was a document that was eligible to be recorded pursuant to Tenn. Code Ann. §§ 66-24-101 and 66-26-101 *et seq.* Tenn. Code Ann. § 66-24-101 (West January 1, 2016 to June 30, 2021) provides in relevant part: "(a) The following writings may be registered: . . . (17) Memoranda of judgments, attachments, orders, injunctions, and other writs affecting title, use or possession of real estate; (18) Certified copies of decrees divesting the title of land out of one person and vesting it in another[.]" The first bankruptcy order constitutes an order affecting title to the disputed property. Tenn. Code Ann. § 66-26-101, in turn, provides: "All of the instruments mentioned in § 66-24-101 shall have effect between the parties to the same, and their heirs and representatives, without registration; but as to other persons, not having actual notice of them, only from the noting thereof for registration on the books of the register, unless otherwise expressly provided." Tenn. Code Ann. § 66-26-103 further provides: "Any instruments not so registered, or noted for registration, shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice." *See Holiday Hosp. Franchising, Inc. v. States Res., Inc.*, 232 S.W.3d 41, 48 (Tenn. Ct. App. 2006) ("Under Tennessee's recording system, an unregistered instrument affecting an interest in real property is effective as between the parties but cannot bind third parties without actual notice until the instrument is properly registered."); *see also Yates v. Chandler*, 38 S.W.2d 70, 71 (Tenn. 1931) ("It is the general rule that the record of an instrument out of the line of title is not constructive notice of the contents of the instrument . . . .") (citation omitted). It is undisputed that Arledge did not record the first bankruptcy order in the disputed property's chain of title, and therefore, Smith did not have constructive notice. Therefore, the dispositive issue is whether Smith was placed on inquiry notice of Arledge's ownership. *See Henderson v. Lawrence*, 369 S.W.2d 553, 556 (Tenn. 1963) ("A bonafide purchaser is one who buys for a valuable consideration without knowledge or notice of facts material to the title.").

Arledge argues that Smith had inquiry notice of his ownership of the disputed property prior to purchasing the property from the trust. Our Supreme Court has previously explained the different concepts of notice, including inquiry notice, as follows:

Notice is generally said to take two forms, actual or constructive. Constructive notice is notice implied or imputed by operation of law and arises as a result of the legal act of recording an instrument under a statute by which recordation has the effect of constructive notice. "It has been well said that 'constructive notice is the law's substitute for actual notice, intended to protect innocent persons who are about to engage in lawful transactions. . . .' " *Tucker v. American Aviation and General Insurance Co.,* 198 Tenn. 160, 165, 278 S.W.2d 677, 679 (1955) (citation omitted). Nevertheless, "[a]ctual notice must be given in the absence of a statute providing some means for constructive notice." 198 Tenn. at 166, 278 S.W.2d at 680 (citations omitted). Constructive notice encourages diligence in protecting one's rights and prevents fraud. If either no statute requires recordation to create constructive notice or a recordable instrument has not been properly recorded, then actual notice is required to estop a person.

While "[i]t is true that recordation creates constructive notice as distinguished from actual notice, in that ordinarily actual notice is when one sees with his eyes that something is done," *Moore v. Cole,* 200 Tenn. 43, 51, 289 S.W.2d 695, 698 (1956), another kind of notice occupying what amounts to a middle ground between constructive notice and actual notice is recognized as inquiry notice. Some authorities classify inquiry notice as a type of constructive notice, but in Tennessee, it has come to be considered as a variant of actual notice. " 'The words "actual notice" do not always mean in law what in metaphysical strictness they import; they more often mean knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts.' " *Texas Co. v. Aycock,* 190 Tenn. 16, 27, 227 S.W.2d 41, 46 (1950) (citation omitted). Even a good faith failure to undertake the inquiry is no defense. *Id.,* 190 Tenn. at 28, 227 S.W.2d at 46. Thus, " '[w]hatever is sufficient to put a person upon inquiry, is notice of all the facts to which that inquiry will lead, when prosecuted with reasonable diligence and good faith.' " *City Finance Co. v. Perry,* 195 Tenn. 81, 84, 257 S.W.2d 1, 2 (1953) (citation omitted).

*Blevins v. Johnson Cnty.,* 746 S.W.2d 678, 682-83 (Tenn. 1988). This Court has further explained: "Tennessee courts have long recognized that: '[n]otice may be either actual or implied. When anything appears which would put a man of ordinary prudence upon inquiry, the law presumes that such inquiry was actually made, and therefore fixes the notice upon him as to all legal consequences.'" *Tyndall v. Holbert*, No. W1999-02018-

COA-R3-CV, 1999 WL 34793987, at *5 (Tenn. Ct. App. Dec. 15, 1999) (quoting *Woodfolk v. Blount*, 4 Tenn. 147, 3 Haywood 104 (1816)).

Arledge contends that the following factors placed Smith on inquiry notice: Arledge's daughter's tenancy on the property, Smith's attendance at a bankruptcy sale of "both Arledge's and Hattaway's debtor's estates", his prior dealings with Arledge and Hattaway, Moore's discovery of the second bankruptcy order during his title search, and deficiencies in the trust documents.

Arledge argues that Smith was aware that an unknown party was in possession of the disputed property as a tenant but that he failed to inquire about this tenant. Arledge contends that had Smith done so, he would have discovered that the tenant was Arledge's daughter and that Arledge owned the disputed property. However, relevant facts alleged by Arledge in his response, such as "Defendant Smith was further aware that someone other than the Seller was in possession of the house on the Property before the closing", are alone insufficient to lead a rational trier of fact to determine whether Smith's knowledge constituted inquiry notice. This Court has previously explained: "'Except in a few jurisdictions, the possession of realty by a person other than the vendor must be inconsistent with the title of the apparent owner by the record in order to impart constructive notice to the purchaser and put him on inquiry. *Where possession is consistent with a recorded title, it is not notice of an unrecorded title.*'" *Gregory v. Alexander*, 367 S.W.2d 292, 296 (Tenn. Ct. App. 1962) (quoting 92 C.J.S. Vendor and Purchaser § 348, page 281); *see also Scott v. Woolard*, 529 P.2d 30, 31 (Wash. Ct. App. 1974) ("[P]ossession by a tenant supplies no notice to a prospective purchaser other than the tenant's right to occupy as a tenant. Such right is not inconsistent with the right of the record owner to convey fee simple title."). Although there is Tennessee case law that explains that knowledge of a lease may place a purchaser on inquiry notice of an "option to purchase" clause, this is not the scenario we are faced with here. *See Texas Co. v. Aycock*, 227 S.W.2d 41, 46 (Tenn. 1950) ("Aycock and wife were put upon an inquiry by notice of this lease as to what were its contents, and as to whether it granted the lessee an option to purchase."). Arledge alleged no facts in his summary judgment filings that would indicate that his daughter's tenancy of the house on the disputed property was inconsistent with the trust's apparent right to rent the premises. We therefore discern no error in the Trial Court's rejection of Arledge's argument.

Next, Arledge contends that Smith was placed on inquiry notice because he was aware of Arledge's and Hattaway's bankruptcy proceedings. According to Arledge, Smith was put on inquiry notice because he attended a joint bankruptcy sale of both Arledge's and Hattaway's debtor's estates, bid on Hattaway's residence, and observed a bankruptcy sale sign on the disputed property, which was taken down after a day or two. As the Trial Court noted, the bankruptcy sale sign on the disputed property did not advertise the land as part of Arledge's bankruptcy proceeding and the bankruptcy proceedings took place several years before Smith purchased the disputed property. These facts are insufficient to demonstrate that Smith had "knowledge of facts and circumstances sufficiently pertinent

- 15 -

in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts." *See id.* at 46 (citation omitted). He further argues that Smith's prior business dealings with Arledge and Hattaway placed him on inquiry notice. However, Smith's prior dealings with Arledge and Hattaway were unrelated to the disputed property, and we can comprehend no reason why these dealings would place Smith on inquiry notice.

Arledge also contends that Smith had inquiry notice because Moore's title search revealed the second bankruptcy order. In his affidavit, Moore acknowledged: "My title search revealed one court order against The Robert R. Hattaway Living Trust that concerned a 131-acre tract of land as described in Record Book 323, Page 211 of the Warren County Register's Office." The second bankruptcy order primarily dealt with an unrelated, 131-acre piece of property, but included language referencing the first bankruptcy order that voided Arledge's transfer of the disputed property to the trust. The second bankruptcy order discovered by Moore stated in pertinent part: "[I]t is ORDERED that the prior Order of the Court filed as Document #39 shall be amended to reflect that the parties in interest have consented to the voiding of the transfers of both real and personal property as described therein." As we have already noted, the first bankruptcy order is referenced in the second as "Document #39."

The question then is whether Moore's discovery of language referencing the first bankruptcy order placed him on inquiry notice and whether Smith should be charged with knowledge that would have resulted from a reasonable inquiry into Document #39. Moore, in his affidavit, explained that he followed applicable industry standards in conducting his title search, explaining:

> Pursuant to applicable industry standards, a title examination using a grantor/grantee index requires the examiner to first search backward in time under the record owner's name to determine when the record owner obtained title. Next, the examiner must perform a search under the name of the prior record owner to determine when the prior record owner obtained title. It is common practice for title attorneys to search backward for the prior thirty-year period. After the backward search is complete, the examiner must conduct a forward search under each of the prior record owner's names and the current record owner for any conveyances made or other interests affecting title to the property.
>
> I conducted my title search of the above-mentioned property in accordance with applicable industry standards.

The chain of title for real property located at 7629 Jacksboro Road, McMinnville, Tennessee 37110 did not include any UCC liens, judgments, court orders, or tax liens against the property.

(Paragraph numbering omitted.)

In addition, both Smith and Arledge cited to Moore's deposition in their competing statements of undisputed material facts and responses. In his deposition, Moore and Arledge's attorney had this interaction, highlighting that Moore's discovery of a reference to Document #39 did not compel him to investigate further:

Q. Right. And the question really is, you know, is there enough here where you would look at it and say, you know, I'm going to look at that. You know, if I were buying this property, would I want to investigate this further and inquire about what the effects of that Document 39 might be?

A. No, sir. I feel like my title examination was thorough.

Q. Okay. And I'm not asking for title examination purposes. I'm asking for purchasing purposes. If you were purchasing this property --

A. No, sir.

Q. -- would you -- would you have any -- feel the need or desire to inquire further?

A. No.

Q. Okay. Now, if you were writing that title insurance policy for the title insurance company, which you wrote one for, would there guidelines or the applicable industry standards for that title insurance policy of that company, require you to look further?

A. No.

Q. They would not?

A. No.

Arledge did not submit any evidence that would contradict the industry standard as explained by Moore or contradict Moore's statements from his deposition. Arledge did not file a competing affidavit from another title attorney discussing industry standard or indicating whether discovery of the second bankruptcy order and its reference to "Document #39" would constitute "'facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts.'" *See id.* at 46 (citation omitted).

We further emphasize that Smith took proper precaution in purchasing the disputed property by hiring Moore to conduct the title search. If a title attorney would not have been placed on inquiry notice by the second bankruptcy order – and we, as the Trial Court was, are unable to say otherwise given the uncontradicted evidence – then we certainly would be unable to conclude that Smith, as an ordinary purchaser should be charged with inquiry notice. To hold otherwise would call into question an ordinary purchaser's ability to rely on a hired title attorney's search and title opinion. Again, had Arledge presented to the Trial Court a competing affidavit or deposition from a different title attorney with a different professional opinion on the import of the second bankruptcy order, we may have come to a different conclusion. But that is not the scenario before us. We also emphasize that the standard is what an ordinary prudent person would have believed and whether such an ordinary prudent person would feel the need to investigate further. Given that a title attorney acting in accordance with industry standard did not feel the need to inquire further, we are unable to conclude that there is a genuine issue of material fact that an ordinary prudent person would have been placed on inquiry notice and imposed with the burden to inquire further.

Although there may be scenarios in which discovery of a reference to a bankruptcy order voiding certain transfers within the chain of title might be sufficient to place a purchaser on inquiry notice, we are unable to say so here given that Arledge presented no evidence contradicting Moore's expert opinion. Instead we, as the Trial Court was, are left with title attorney Moore's statements about the industry standard for title searches and what those standards did and did not require be done. Arledge did not present a countervailing view from another title attorney. Moore's view as to what was a thorough title search and what would lead "reasonably cautious and prudent persons to investigate" were uncontradicted by Arledge. *See id.* We accordingly find no error in the Trial Court's conclusion that discovery of the second bankruptcy order did not place Smith on inquiry notice.

Lastly, Arledge argues that deficiencies in the trust documentation placed Smith on inquiry notice. Arledge cites to Tenn. Code Ann. § 35-1-101(b) for the following proposition:

(1) When real estate is held as part of the trust property and a trustee has resigned or been removed without order of a court, the resigning or removed trustee shall execute and record an instrument that:

(A) Recites the resignation or removal of the trustee;

(B) Gives the name and address of the successor trustee, if any; and

(C) Identifies each parcel of real estate held by the trust.

(2) A successor trustee, or a remaining trustee if there is no successor, shall execute and record the instrument described in subdivision (b)(1) if the resigning or removed trustee fails to record the required instrument within thirty (30) days after resigning or being removed.

According to Arledge, Hattaway did not follow this procedure after the former trustee, Jeffrey Scott Hughes ("Hughes") resigned. Arledge argues that Hattaway's failure should have placed Smith on inquiry notice.

Arledge has not presented any case law to support his proposition that a party's failure to comply with Tenn. Code Ann. § 35-1-101 places a purchaser on inquiry notice, nor has our research revealed any. Furthermore, the trust agreement provided to Moore states that the "Grantor is the Trustee"; no one disputed that Hattaway was the grantor. Along with the trust agreement, Hattaway presented to Moore Hughes's certificate of resignation as trustee. Although the certificate of resignation is dated over a year after the date of the trust agreement, we still fail to discern how the deficiencies in the trust documentation would lead a reasonable trier of fact to conclude that Smith had inquiry notice of a competing interest, particularly considering that the trust was the record owner. Therefore, although Hattaway may not have complied with Tenn. Code Ann. § 35-1-101, this failure would not lead a reasonable trier of fact to conclude that Smith was on inquiry notice that the trust did not own the disputed property, particularly in light of the results of the title search. We accordingly find no reason to reverse the Trial Court's judgment on this basis.

Based on the foregoing, we conclude, as did the Trial Court, that the undisputed facts and evidence fail to demonstrate that Smith had notice of material issues affecting title to the disputed property. We therefore affirm the Trial Court's finding that there was no genuine issue of material fact indicating that Smith should be charged with inquiry notice.

## Conclusion

Upon our review, we affirm the Trial Court's judgment granting Smith's motion for summary judgment. We remand this cause to the Trial Court for further proceedings and collection of costs below. The costs on appeal are assessed against the appellant, John Milton Arledge, and his surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE